# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00014-CV

**Mayor Hector Gonzales, Commissioner Kenneth W. Moon, Commissioner Thomas Trantham, and Village of Webberville, Appellants**

**v.**

**Concerned Citizens of Webberville, David Glass, Ricky Turner, Jeannette Johnston, Robert Coe, James Sansom, Carroll Sansom, Matthew Pond, and Weldon R. Johnston, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT NO. GN301631, HONORABLE PAUL DAVIS, JUDGE PRESIDING

## O P I N I O N

Our disposition of this accelerated interlocutory appeal turns on whether appellees have standing to challenge the incorporation of a municipality. Because we hold that appellees' pleadings and the evidence demonstrate that appellees challenge the incorporation as voidable rather than void, we vacate the denial of the plea to the jurisdiction and dismiss for want of jurisdiction.

## BACKGROUND

The underlying dispute in this case concerns whether the village of Webberville was properly incorporated as a Type C municipality. *See* Tex. Loc. Gov't Code Ann. § 8.001 (West 1999). The following facts are undisputed. Webberville is a community located in eastern Travis County whose historical origins date back to the mid-1830s. On December 2, 2002, appellants

Gonzales, Moon, and Trantham filed a petition with the Travis County Judge to incorporate a land area in and around the Webberville community as a Type C municipality. *See id*. § 8.002 (West 1999).[1] The petition alleged that the community included fewer than 2,000 inhabitants and not more than two square miles of surface area. *See id*. § 5.901 (West 1999) (community with fewer than 2,000 inhabitants must have not more than two square miles of surface area); *id*. § 8.001. The petition also included a detailed textual statement describing the proposed perimeter boundaries and a plat providing a graphic illustration of the boundaries. Within the outer perimeter boundaries were various "holes" that were excluded from the area to be incorporated.[2]

The petition was signed by more than fifty registered voters residing within the proposed municipal boundaries.[3] *See id*. § 8.002. Attached to the petition was Trantham's sworn statement that the proposed boundaries included more than 201 inhabitants. *See id*. § 8.001 (area incorporating as Type C general-law municipality must have between 201 and 4,999 inhabitants).

When a petition for incorporation is filed, the county judge is required to order an incorporation election if "satisfactory proof is made that the community contains the requisite number of inhabitants." *Id*. § 8.003 (West 1999). The county judge heard evidence on the petition at a hearing held on December 17, 2002. The evidence included a December 16 memorandum from

---

[1] The record suggests that the incorporation effort was spurred by a land use issue; specifically, certain residents were concerned about gravel mining in the area and had a desire to create a local government that could regulate such activities. We are not asked to address the validity of any regulatory actions in this appeal.

[2] In the "excluded properties" section of the statement, the property is listed by description— *i.e.*, "power line easement" or "excluded rectangle"—in addition to the number of acres excluded.

[3] Webberville no longer has a United States Post Office; area residents who signed the petition had mailing addresses in Manor and Elgin.

Joseph P. Gieselman, Executive Manager of the Travis County Transportation and Natural Resources Department. The Gieselman memorandum states that "through aerial photography we have been able to verify that there are 215 houses in the proposed areas. With a household size of 2.47 for Travis County (U.S. Census), multiplied by the number of houses would equal approximately 530 persons." Reviewing the statutory requirements for a Type C general law municipality, Gieselman stated that the department "has now determined that the area is 1.98 square miles" and that "petitioners have therefore met the statutory requirements of the law under criteria #(1) [local government code section 5.901(1)] and as a Type C General-Law municipality."

The county judge then found satisfactory proof that the statutory requirements had been met, including that the "area to be incorporated contains fewer than 2,000 inhabitants and does not have more than two square miles of surface area, therefore satisfying the requirements of Texas Local Government Code, § 5.901." Thus, he ordered an election on Saturday, February 1, 2003, in which the voters residing within the proposed village of Webberville would decide whether to incorporate that entity. The incorporation election was closely contested; the vote in favor of incorporation was ninety-four to eighty-seven. Concurrently, the voters elected Gonzales as mayor and Moon and Trantham as commissioners. *See id*. § 8.001(b). Appellees have not contested the results of this election.

On February 18, the county judge ordered the community of Webberville, as contained within the territory and boundaries identified in the petition, incorporated as a Type C General Law Municipality. In the order, Gonzales was declared mayor and Moon and Trantham commissioners. The new village government then adopted various ordinances in March, including

3

a right-of-way management ordinance, an ordinance creating a municipal court, an ordinance granting a utility franchise, a traffic-regulation ordinance, and a flood damage prevention ordinance. Additionally, moratoriums on subdivisions, excavations, and buildings were adopted. On May 3, the voters approved a sales and use tax of 1.75% in a special election.

On May 20, 2003, appellees filed suit against Gonzales, Moon, Trantham, and the City of Webberville seeking a permanent injunction prohibiting the sales tax and enforcement of the ordinances and moratoriums. While the suit was pending, on May 15, 2004, Gonzales, Moon, and Trantham were each re-elected to their village government posts.[4] In June, both sides filed motions for summary judgment, and appellants filed a plea to the jurisdiction. After hearing evidence,[5] which included the Gieselman memorandum, the district court denied the plea to the jurisdiction and both motions for summary judgment. Appellants then brought this interlocutory appeal from the denial of their plea to the jurisdiction. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014 (West Supp. 2004-05).

## DISCUSSION

Appellants present three issues on appeal that challenge the district court's denial of their plea to the jurisdiction. They urge that private parties like appellees lack standing to challenge a municipal incorporation that is not void *ab initio*; that only the State, through a quo warranto action, can bring such a challenge against a *de facto* municipality; and that private parties may not

---

[4] Gonzales ran unopposed. Moon defeated appellee Weldon Johnston, and Trantham defeated Stephen Turner, son of appellee Ricky Turner.

[5] *See Texas Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227-28 (Tex. 2004).

4

collaterally attack a municipal incorporation where municipal boundaries, as drawn, comply with statutory limits on surface area.

Appellees concede the legal principles that private parties lack standing to challenge municipal incorporations that are not void *ab initio* and that Texas law requires a quo warranto action to challenge *de facto* municipalities. *See Durham v. Crutchfield*, 578 S.W.2d 438, 440 (Tex. Civ. App.—Texarkana 1979, writ ref'd n.r.e.);[6] *see also Walling v. North Cent. Tex. Mun. Water Auth.*, 348 S.W.2d 532, 533 (Tex. 1961). However, appellees assert that they *are* challenging Webberville's incorporation as void—specifically, they contend that appellants failed to comply with the statutory requirement limiting the municipality's surface area to two square miles. *See* Tex. Loc. Gov't Code Ann. §§ 5.901, 8.001.

Appellees also argue that because they have challenged Webberville's incorporation as void and not merely voidable, appellants cannot bring this appeal because Webberville's status as a "governmental unit" remains in issue. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 51.014(a)(8), 101.001 (West 2005). Appellants respond that appellees have failed to raise an issue that

---

[6] As the *Durham* court explained:

> [I]t is clear that a quo warranto proceeding, instituted and conducted in the name of the State of Texas, is the only proper method of making a direct attack upon a voidable municipal corporation existing defacto or under color of law. Private parties, by themselves, lack standing to directly attack the existence and organization of a municipal corporation, and any such suit brought by private individuals alone will be dismissed for want of a necessary party, the State of Texas. Only the State of Texas can directly attack a voidable incorporation by a quo warranto proceeding.

*Durham v. Crutchfield*, 578 S.W.2d 438, 440 (Tex. Civ. App.—Texarkana 1979, writ ref'd n.r.e.).

Webberville's incorporation is void and thus, Webberville retains the status of a *de facto* municipality unless and until it is judicially deprived of that status in a properly asserted quo warranto action.

We agree with appellants that our threshold jurisdictional inquiry overlaps somewhat with the merits of appellants' plea to the jurisdiction—if appellees' pleadings and evidence do not raise a fact issue regarding whether Webberville's incorporation was void due to noncompliance with statutory area limitations, their claim would necessarily fail and Webberville would continue to enjoy the status of a *de facto* municipality with standing to bring this appeal. We accordingly turn to these intertwined issues.

**Standard of review**

Whether appellees have alleged facts that affirmatively demonstrate subject-matter jurisdiction is a question of law reviewed *de novo*. *See Miranda*, 133 S.W.3d at 226. Likewise, whether undisputed evidence of jurisdictional facts establishes a trial court's jurisdiction is also a question of law. *Id*. In some cases, disputed evidence of jurisdictional facts that also implicates the merits of the case may require resolution by the finder of fact. *See id*. (*citing Gates v. Pitts*, 291 S.W. 948, 949 (Tex. Civ. App.—Amarillo 1927, no writ)). In this case, however, undisputed evidence implicates both the subject-matter jurisdiction of the court and the merits of the case. *Miranda*, 133 S.W.3d at 226.

When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Id*. (citing *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). We construe the

6

pleadings liberally in favor of the plaintiffs and look to their intent. *Id*. If the pleadings do not contain sufficient facts to affirmatively demonstrate the court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend. *Id*. at 226-27; *see County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002). If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend. *Miranda*, 133 S.W.3d at 226-27.

However, if a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do. *See id*.; *see also Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction and the fact issue will be resolved by the fact finder. *Miranda*, 133 S.W.3d at 228. However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court may rule on the plea to the jurisdiction as a matter of law. *See id*.

**Application**

Defects in the incorporation process which render the incorporation absolutely void are limited to allegations: (1) that the act of incorporation itself was either prohibited or unauthorized by law; (2) that the purported incorporation was pursuant to an unconstitutional statute; or (3) that the attempt to comply with the provisions of the law authorizing the creation of such municipality was so utterly lacking or defective as to render the attempt to create such corporation

7

void. *Durham*, 578 S.W.2d at 441. Appellants concede that a violation of the surface area limitation requirements would constitute the third type of defect. *See* Tex. Loc. Gov't Code Ann. §§ 5.901, 8.001.

Turning first to appellees' pleadings, it is undisputed that appellees have alleged that Webberville's incorporation was void. On its face, appellees' live petition alleges that the "incorporation of the purported Village of Webberville is void (not merely voidable) and the efforts to exercise of [sic] municipal powers by Defendants Gonzales, Moon and Trantham are illegal *because the community was statutorily prohibited from incorporating because it exceeds the two square mile surface* prohibited by Tex. Loc. Gov't Code Ann. §§ 5.901(1) and 8.01(3)." (Emphasis added.) Based on these pleadings alone, the district court would have properly denied the plea to the jurisdiction. *See Durham*, 578 S.W.2d at 440-41.

However, appellants introduced undisputed evidence—specifically, the Gieselman memorandum—that Webberville's incorporated area was less than two square miles. *See Miranda*, 133 S.W.3d at 227; *Bland*, 34 S.W.3d at 555; *see also* Tex. Loc. Gov't Code Ann. §§ 5.901, 8.001. Appellees, in fact, concede that the municipal boundaries were intentionally drawn to include less than two square miles of surface area. Their contention, rather, is that appellants violated the statutory surface area limitations and rendered the incorporation void by including within the incorporated territory "unincorporated voids, forming islands of unincorporated areas within a sea of municipal territory," excluding "local historic Webberville community locations such as a downtown church and residences traditionally considered to be part of the Village." The parties do not dispute that the areas within the excluded "donut holes" are uninhabited. They also agree that

if the excluded areas were included in the calculation of surface area, the incorporated area would exceed two square miles in violation of section 5.901.  *See* Tex. Loc. Gov't Code Ann. § 5.901.

Appellants respond by claiming that the areas were excluded for valid reasons including avoiding power line easements, flood plains, or areas within the extra-territorial jurisdiction of the City of Bastrop.  *See id*. § 42.041 (West 1999) (municipality may not be incorporated in extraterritorial jurisdiction of existing municipality without written consent of governing body of existing municipality); *see also Hoffman v. Elliott*, 476 S.W.2d 845, 846 (Tex. 1972).  We need not consider the validity of these reasons because appellees' argument turns purely on a question of statutory interpretation:  whether an incorporated area of less than two square miles of surface area, which thus complies with the literal language of section 5.901, nonetheless violates the limitation because it excludes "islands" or "holes" that, if included, would cause the area to exceed two square miles.  *See* Tex. Loc. Gov't Code Ann. § 5.901.  As they explained during oral argument, appellees' position is essentially that the legislature could not have intended section 5.901 to allow appellants to "carve out" islands or holes within the perimeter of municipal boundaries.

If language in a statute is unambiguous, we consider the intent of the legislature as found in the plain and common meaning of the words and terms used.  *See Sorokolit v. Rhodes*, 889 S.W.2d 239, 241 (Tex. 1994); *see also Montgomery Indep. Sch. Dist. v. Davis*, 34 S.W.3d 559, 564 (Tex. 2000).  In applying the plain and common meaning of the language in a statute, courts may not by implication enlarge the meaning of any word in the statute beyond its ordinary meaning; such implication is inappropriate when legislative intent may be gathered from a reasonable interpretation of the statute as it is written.  *Sorokolit*, 889 S.W.3d at 241; *see Monsanto Co. v. Cornerstones Mun.*

9

*Util. Dist.*, 865 S.W.2d 937, 939 (Tex. 1993); *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 352 (Tex. 1990); *see also Laidlaw Waste Sys. v. City of Wilmer*, 904 S.W.2d 656, 659 (Tex. 1995) (general rule is that courts should not insert words in statute except to give effect to clear legislative intent). On its face, section 5.901 requires only that an incorporated area contain less than two square miles. *See* Tex. Loc. Gov't Code Ann. § 5.901. It contains no requirement that the incorporated area be fully inclusive of all surface areas within its perimeter boundaries, or even that the incorporated area be a single contiguous area. *See id*. Significantly, the legislature has chosen to include this type of requirement in other statutes. *See id*. § 43.071 (West 1999) (generally, municipality may not annex area in water or sewer district unless it annexes entire part of district outside municipality's boundaries); Tex. Educ. Code Ann. § 41.206 (West 1996) (property may be annexed by school district without regard to whether property is contiguous to other property in district); *Id*. § 13.051 (West 1996) (territory may be detached from school district and annexed by another school district that is contiguous to detached territory); *see also* Tex. Loc. Gov't Code Ann. § 43.054 (West Supp. 2004-05) (generally, municipality with population less than 1.6 million may not annex publicly or privately owned area, including strip of area following course of road, highway, river, stream, or creek, unless width of area at narrowest point is at least 1,000 feet). We must assume that the legislature acted deliberately in omitting such limitations from section 5.901. *See Sorokolit*, 889 S.W.3d at 241. In light of the language the legislature has chosen to govern the surface area limitations of Type C general law municipalities, we must reject appellees' contention that we infer an additional, contrary limitation. *See* Tex. Loc. Gov't Code Ann. §§ 5.901, 8.001; *see also Sorokolit*, 889 S.W.3d at 241. Furthermore, appellees have cited no authority that would

support their construction of section 5.901. Unless and until the Texas Supreme Court instructs us otherwise, we are bound to construe the statutory text as written.

Additionally, while we do not find these factors to be dispositive, we note that the parties agree that none of the areas excluded from the incorporated area were inhabited. Thus, this is not a case where it is alleged that the petitioners manipulated the municipal boundaries in order to impact the incorporation election.[7] Moreover, we observe that if we were to declare the Webberville incorporation void, we would be judicially supplanting the will of the voters in that municipality. Implicit in our democratic constitutional system is that, barring the type of extraordinary issues regarding ballot compilation that are addressed in election contests, *see* Tex. Elec. Code Ann. §§ 221.001-.017 (West 2003 & Supp. 2004-05), which are not presented here, elections should be decided by voters rather than courts. Cognizant of our proper role in our constitutional scheme, we are reluctant to intervene in the Webberville incorporation election based on appellees' novel construction of section 5.901.

We conclude that appellees have failed to raise a fact issue that the Webberville incorporation was void *ab initio*. Accordingly, appellees cannot show that Webberville is not a *de facto* municipality; thus, appellants have the legal right to pursue this interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8). For the same reasons, we hold that the district court erred in denying appellants' plea to the jurisdiction. Because the legal basis of appellees' complaint

---

[7] We express no opinion regarding the implication of such an allegation, although we note that one of our sister courts has held that "gerrymandering" of boundaries did not render an incorporation election void. *See City of Gladewater v. Pelphrey*, 309 S.W.2d 472, 473 (Tex. Civ. App.—Texarkana 1957, writ ref'd n.r.e.).

11

is that the incorporation is voidable, not void, appellees lack standing to pursue their claims, the State of Texas is a necessary party, and a quo warranto action is the only remedy through which appellees' claims may be advanced. *Durham*, 578 S.W.2d at 440-41. Appellants' first and second issues are sustained.

Because we have already found that a quo warranto action was required in this case, we do not reach appellants' issues regarding whether the factual findings of the county judge may only be collaterally attacked through a quo warranto action, or whether appellees have sufficiently alleged a special burden which would confer standing on them if the incorporation was void. *See City of West Lake Hills v. State ex rel. City of Austin*, 466 S.W.2d 722, 727 (Tex. 1971) ("even if the municipal act is void, the private party must suffer some burden peculiar to himself to acquire standing to sue.").

## CONCLUSION

We vacate the district court's order denying appellants' plea to the jurisdiction and dismiss appellees' petition for want of jurisdiction.

_____

Bob Pemberton, Justice

Before Justices B. A. Smith, Puryear and Pemberton

Vacated and Dismissed for Want of Jurisdiction

Filed: July 28, 2005