In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00058-CV
______________________________


SAVE OUR SPRINGS ALLIANCE, INC., AND
WILLIAM G. BUNCH, Appellants
 
V.
 
LAZY NINE MUNICIPAL UTILITY DISTRICT, 
BY AND THROUGH ITS BOARD OF DIRECTORS, AND
C. A. ELDER, VINCENT HUEBINGER, BILL SIMPSON,
AND CORD SHIFLET, IN THEIR OFFICIAL CAPACITIES
AS LAZY NINE MUNICIPAL UTILITY DISTRICT
BOARD MEMBERS, Appellees


                                              

On Appeal from the 250th Judicial District Court
Travis County, Texas
Trial Court No. GN 402045


                                                 


Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross


O P I N I O N

          Save Our Springs Alliance, Inc. (SOS) brought suit against Lazy 9 Municipal Utility
District (Lazy 9), challenging the constitutionality of the legislative bill creating that district.


 
SOS advanced, in essence, two arguments as to why the bill was unconstitutional: 1) the
bill's author provided inadequate notice of the bill, and 2) the bill makes an unconstitutional
delegation of authority to Lazy 9 by allowing Lazy 9 to create additional districts within its
area. In response, Lazy 9 argues that the formation of the district could only be challenged
in a quo warranto proceeding and that the enrolled bill rule bars the admission of extrinsic
evidence. 
          Following a bench trial, the trial court found the bill to be constitutional, awarded
$294,000.00 in attorney's fees to Lazy 9, and sanctioned SOS' attorney, William G. Bunch,
in the amount of $5,000.00 for filing a frivolous lawsuit and for filing a lawsuit for an
improper purpose. SOS and Bunch appeal, raising six points of error challenging the trial
court's exclusion of evidence based on the quo warranto doctrine and the enrolled bill rule,
finding the delegation of authority to Lazy 9 constitutional, awarding attorney's fees to
Lazy 9, and assessing sanctions against Bunch. 
          We conclude the quo warranto doctrine did not prevent SOS from bringing this suit. 
The trial court did not err in excluding evidence relating to the lack of notice because the
enrolled bill rule bars the introduction of such evidence. Even if the trial court erred in
excluding evidence relating to whether the bill contains an unconstitutional delegation, SOS
has failed to show that the evidence probably caused the rendition of an improper
judgment. Last, we conclude the trial court did not err in awarding attorney's fees to Lazy 9
but did err in assessing sanctions against Bunch. We, therefore, affirm in part and reverse
in part.
Background
          Article XVI, Section 59 of the Texas Constitution authorizes the Legislature to create
conservation and reclamation districts. Tex. Const. art. XVI, § 59. The Texas Legislature
has provided for the creation of a number of kinds of conservation and reclamation
districts. Of the numerous types of districts, municipal utility districts are the most popular. 
See 36A David B. Brooks, Texas Practice: County and Special District Law § 46.71,
228–29 (2002). Such districts are generally created to provide water, sewer, drainage, and
other services. 
          Municipal utility districts may be created in one of two ways: by the Texas
Commission on Environmental Quality (TCEQ) or by a specific act of the Texas
Legislature. See 36A David B. Brooks, Texas Practice: County and Special District
Law § 46.6, 124–25 (2002). Municipal districts created by the TCEQ are called "general
law districts," and municipal utility districts created by a specific act of the Texas
Legislature are called "special law districts." See id. at 123. The Legislature is not limited
in the manner in which a special law district is organized or governed. Id. Before the
creation of a district, notice must be given of such intention. Section 59(e) of the Texas
Constitution provides as follows:
No law creating a conservation and reclamation district shall be passed
unless, at the time notice of the intention to introduce a bill is published as
provided in Subsection (d) of this section, a copy of the proposed bill is
delivered to the commissioners court of each county in which said district or
any part thereof is or will be located and to the governing body of each
incorporated city or town in whose jurisdiction said district or any part thereof
is or will be located. Each such commissioners court and governing body
may file its written consent or opposition to the creation of the proposed
district with the governor, lieutenant governor, and speaker of the house of
representatives. Each special law creating a conservation and reclamation
district shall comply with the provisions of the general laws then in effect
relating to consent by political subdivisions to the creation of conservation
and reclamation districts and to the inclusion of land within the district. 

Tex. Const. art. XVI, § 59(e). 
          Lazy 9 was created by the Texas Legislature through House Bill 3565 during the
78th Legislature's regular session. See Act of May 28, 2003, 78th Leg., R.S., ch. 1158,
2003 Tex. Gen. Laws 3268. The Act declared Lazy 9 to be a "governmental agency and
a political subdivision of this state." See id. at § 2(b). In a twelve-page description, the Act
establishes the boundaries of the district encompassing 1,719 acres. Id. at § 4. The
district skirts the edge of, but avoids, the extraterritorial jurisdiction of the City of Austin. 
When the bill was introduced, the land was owned by a number of individuals who were
heirs to the Davenport Estate. On June 29, 2004, before the bill took effect, the land was
purchased by Forest Creek Sweetwater Development, Ltd. Lazy 9 was created for the
purpose of providing utilities and other services for a development planned by Sweetwater. 
In fact, Brad Whittingham, one of the developers, testified Sweetwater could not have
afforded to develop the land without the creation of a municipal utility district. 
          SOS is an environmental organization with over 3,000 members, including members
living along Bee Creek located downstream from Lazy 9, as well as members living
adjacent to Lazy 9 in the Little Barton Creek Watershed. SOS originally focused its
activities on the preservation of the Little Barton Creek Watershed, but has broadened its
objectives in recent years to trying to protect a larger swath of the Texas hill-country
environment by attempting to protect sensitive watersheds which provide drinking water
to the City of Austin. Lazy 9 principally lies within the Lake Travis Watershed. Although
only a few acres of Lazy 9 are currently within the Little Barton Creek Watershed, Lazy 9
has sought a certificate of convenience and necessity


 to provide water to another
development owned by the developer which is located in the Little Barton Creek
Watershed. 
          House Bill 3565 took effect September 1, 2003. In the bill, the Legislature appointed
five temporary directors to the Lazy 9 board of directors and required them to hold an
election to confirm the establishment of the district and its initial directors. See Act of
May 28, 2003, at §§ 8–9. The temporary directors held an organizational meeting
September 11, 2003. 
          SOS filed suit against Lazy 9 June 29, 2004, alleging, among other things, that the
notice of the bill was unconstitutional and that the bill made an unconstitutional delegation
of power. At the trial on the merits, the court refused to admit evidence concerning the
inadequate notice or the unconstitutional delegation of power. SOS objected to these
rulings and made numerous and voluminous offers of proof. 
          In its findings of fact and conclusions of law, the trial court found that SOS lacked
standing to challenge the constitutionality of the notice or to seek relief on its claims that
Lazy 9 "is not a real district." The court also found that the enrolled bill rule prohibits
challenging the adequacy of the notice and that the notice met all the requirements of
Article XVI, Section 59 of the Texas Constitution. The trial court further held that Lazy 9
was a validly created governmental agency and that the delegation of the power to divide
into two or more districts was accompanied by reasonable standards to guide the exercise
of such power and, therefore, was a proper power. In addition, the trial court found that
the lawsuit lacked merit and found that Bunch filed the lawsuit for an improper purpose. 
The trial court awarded $199,000.00 in attorney's fees for trial, $45,000.00 for appeal,
$20,000.00 if review is sought in the Texas Supreme Court, and $30,000.00 if review is
granted by the Texas Supreme Court.


 Last, the trial court awarded sanctions against
Bunch in the amount of $5,000.00.
I.        Could SOS Bring this Lawsuit?
          Lazy 9 proposes two arguments as to why SOS could not bring suit to challenge
House Bill 3565. First, Lazy 9 contends SOS lacked standing because this suit must be
brought as a quo warranto proceeding. Second, Lazy 9 contends the Texas Water Code
prohibited SOS from bringing suit. We conclude that the suit was not required to be
brought as a quo warranto proceeding and that the Texas Water Code prohibition does not
apply to special law districts. SOS, therefore, had standing to bring this suit.
          A.       Quo Warranto 
          Quo warranto is an ancient common-law writ "in the nature of a writ of right for the
king against a person who claimed or usurped any office, franchise, or liberty, to inquire
by what authority he supported his claim, in order to determine the right." State ex rel.
Colleyville v. City of Hurst, 519 S.W.2d 698, 700 (Tex. Civ. App.—Fort Worth 1975, writ
ref'd n.r.e.). A writ of quo warranto is an extraordinary remedy available to decide issues
concerning the proper person entitled to a public office and exercise its functions. State
ex rel. Angelini v. Hardberger, 932 S.W.2d 489, 490 (Tex. 1996). Quo warranto is also
available to question the existence of a public corporation or district and its right to act. 
See Village of Lakeway v. Lakeway Mun. Util. Dist. No. 1, 657 S.W.2d 912, 915 (Tex.
App.—Austin 1983, writ ref'd n.r.e.). In general, the legality of a public corporation or
district must be challenged through a quo warranto proceeding.


 
          SOS contends that quo warranto proceedings are not required when a district is
challenged on constitutional grounds. In support of this contention, SOS cites FM Props.
Operating Co. v. City of Austin, 22 S.W.3d 868 (Tex. 2000) (finding "water quality
protection zones" unconstitutional); Barshop v. Medina County Underground Water
Conservation Dist., 925 S.W.2d 618 (Tex. 1996); and Sw. Travis County Water Dist. v. City
of Austin, 64 S.W.3d 25 (Tex. App.—Austin 2000, pet. dism'd) (finding statute
unconstitutional). However, none of these cases explicitly state such an exception. While
all these cases were decided on constitutional grounds, none discuss whether the
challenges could only be brought by quo warranto proceedings. 
          Lazy 9 contends that most of these cases were brought by governmental agencies. 
However, as SOS points out, none of these governmental agencies possessed authority
to bring quo warranto proceedings. Authority to bring quo warranto proceedings is limited
to the Texas Attorney General, county attorneys, and district attorneys. See Tex. Civ.
Prac. & Rem. Code Ann. § 66.001 (Vernon 1997).
          One exception to the general rule—that challenges to the creation of a water district
must be brought through quo warranto proceedings—is that acts, which are void, can be
challenged in proceedings other than quo warranto proceedings. In Alexander Oil, 825
S.W.2d at 436, the Texas Supreme Court explicitly upheld the line of authority holding quo
warranto is not the sole method for attack if the statute creating the authority is void. See
Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer, 904 S.W.2d 656, 658 (Tex. 1995);
Gonzales v. Concerned Citizens of Webberville, 173 S.W.3d 112, 116 (Tex. App.—Austin
2005, pet. denied); Durham v. Crutchfield, 578 S.W.2d 438, 440 (Tex. Civ.
App.—Texarkana 1979, writ ref'd n.r.e.). Acts which are merely voidable rather than void,
such as procedural irregularities, must be challenged through quo warranto proceedings
brought by the State. See Alexander Oil, 825 S.W.2d at 439; Gonzales, 173 S.W.2d at
115–16; Durham, 578 S.W.2d at 440; City of Irving v. Callaway, 363 S.W.2d 832, 834
(Tex. Civ. App.—Dallas 1962, writ ref'd n.r.e.). 
          The difference, however, between a void act and a voidable act is not clearly
defined. In Laidlaw Waste, the Texas Supreme Court, citing only Alexander Oil, 825
S.W.2d at 436, held that a private party can collaterally attack a statute as being wholly
void, but it noted in dicta that a party has no standing to challenge a statute on "procedural
grounds, such as alleged failures to meet the notice and signature requirements . . . ."


 
Laidlaw Waste Sys., 904 S.W.2d at 658. Although Laidlaw Waste included notice as a
"procedural" issue which must be brought through quo warranto proceedings, we conclude
the instant case is distinguishable because the notice is constitutionally required. We
believe that the dicta in Laidlaw Waste referred to statutory notice rather than
constitutionally required notice. Texas courts have consistently held statutory notice
challenges must be brought through quo warranto proceedings. See City of Balch Springs
v. George F. Lucas Irrevocable Family Trust, 101 S.W.3d 116, 122 (Tex. App.—Dallas
2002, no pet.) (statutory notice claims must be brought through quo warranto); City of San
Antonio v. Hardee, 70 S.W.3d 207, 210 (Tex. App.—San Antonio 2001, no pet.) (statutory
notice claims must be brought through quo warranto). But without constitutionally required
notice, an act is void. An unconstitutional statute does not constitute color of law. Miller
v. Davis, 136 Tex. 299, 150 S.W.2d 973 (1941); City of Houston v. Rodehever, 615 S.W.2d
837, 839 (Tex. Civ. App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.). "A legislative Act
which contravenes the Constitution is a void Act. It amounts to nothing and accomplishes
nothing. . . . If an Act is unconstitutional, it is no law at all." Miller, 150 S.W.2d at 978. The
lack of constitutionally required notice results in a void act which can be challenged through
proceedings other than quo warranto proceedings. Likewise, SOS' argument—that the Act
makes an unconstitutional delegation of power—is also an allegation the Act is void. 
          Although challenges to the existence of water districts normally must be brought
through quo warranto proceedings, the allegation the bill lacked constitutionally required
notice and contained an unconstitutional delegation would, if true, result in a void act. 
Therefore, these issues can be challenged through means other than quo warranto
proceedings. The trial court erred in finding the bill could only be challenged through quo
warranto proceedings.
          B.       The Texas Water Code
           Lazy 9's second argument as to why SOS could not bring suit is that the Texas
Water Code provides that only the attorney general can bring suit to contest the creation
of a water district. We disagree. The Water Code's prohibition applies only to general law
districts.
          Section 49.066 of the Texas Water Code provides that no suit may be instituted in
any court of this State contesting "the validity of the creation and boundaries of a district
created under this code" except in a "suit brought by the State of Texas through the
attorney general." Tex. Water Code Ann. § 49.066(d), (e) (Vernon 2000). SOS advances
two arguments as to why Section 49.066 should not apply.
          First, SOS cites Bexar Metro. Water Dist. v. City of Bulverde, 156 S.W.3d 79 (Tex.
App.—Austin 2004, pet. denied), for the proposition that Section 49.066 only applies to
challenges to the original boundaries of a water district. While the Austin Court of Appeals
did state "[t]he third-party prohibition only applies to claims attacking the validity of a
legislative act creating a water district's boundaries,"


 the Austin court did not limit the
section when the quoted language is considered in context of the case. In Bexar Metro.
Water Dist., the Austin court held that a dispute concerning annexation boundaries could
be brought by private parties because the statute only prohibited challenging the
boundaries that existed when the district was created. The court's language was limited
because the suit only concerned a dispute over boundaries created by annexation. 
          Second, SOS contends Section 49.066 does not apply to this case because it only
applies to general law districts. We agree. Section 49.066 is located in the subsection
titled "General Law Districts." Further, the use of the qualifying language "created under
this code" indicates that the section applies only to general law districts. Although the
definition of "districts" likely includes special law districts,


 Section 49.066 qualifies the term
"district" with the phrase "created under this code." Only general law districts are created
by TCEQ under the procedures of the Water Code. See Tex. Water Code Ann.
§ 54.001–.812 (Vernon 2002 & Supp. 2005). Special law districts are created by specific
acts of the Texas Legislature. Section 49.066 does not apply to special law districts.



          Lazy 9 contends Section 49.066 applies to both general law districts and special law
districts, but cites no caselaw for this proposition. In addition, Lazy 9 contends Section
49.066 applies due to the language of the bill. Section 11 of House Bill 3565, the Act
creating Lazy 9, provides "[t]he district has all of the rights, powers, privileges, authority,
functions, and duties provided by the general law of this state, including Chapters 30, 49,
50, and 54, Water Code, applicable to municipal utility districts created under Section 59,
Article XVI, Texas Constitution." See Act of May 28, 2003, at § 11. We disagree that this
language makes Section 49.066 applicable to Lazy 9, a special law district.
          Section 49.066 applies only to districts created under the provisions of the Texas
Water Code. Because Lazy 9 was created by a special act of the Texas Legislature, the
section does not prohibit this suit. We reject Lazy 9's argument that Section 49.066
prohibits SOS from bringing this suit.
II.       The Enrolled Bill Rule Bars Introduction of Evidence
          SOS contends the trial court erred in excluding its evidence challenging whether the
notice provisions of Article XVI, Section 59(e) of the Texas Constitution have been met. 
The inclusion or exclusion of evidence is committed to the trial court's discretion; as such,
the appellate court reviews these issues under an abuse of discretion standard. Tex. Dep't
of Transp. v. Able, 35 S.W.3d 608, 617 (Tex. 2000); see also City of Brownsville v.
Alvarado, 897 S.W.2d 750, 753 (Tex. 1995); SunBridge Healthcare Corp. v. Penny, 160
S.W.3d 230, 239 (Tex. App.—Texarkana 2005, no pet.). A trial court abuses its discretion
when it rules without regard to any guiding rules or principles. Scottsdale Ins. Co. v. Nat'l
Emergency Servs., Inc., 175 S.W.3d 284, 297 (Tex. App.—Houston [1st Dist.] 2004, pet.
denied). We affirm a trial court's ruling if there is any legitimate basis for the ruling. 
Scottsdale Ins. Co., 175 S.W.3d at 297; Rogers v. Peeler, 146 S.W.3d 765, 773 (Tex.
App.—Texarkana 2004, no pet.). A trial court cannot abuse its discretion if it reaches the
right result, even for the wrong reasons. Luxenberg v. Marshall, 835 S.W.2d 136, 141–42
(Tex. App.—Dallas 1992, no writ). Lazy 9 contends the enrolled bill rule prohibits evidence
from being introduced relating to any deficiencies in the notice. We agree.
          The bill creating Lazy 9 provides that the notice requirements have been met. 
Section 21(a) of House Bill 3565 states:
The legal notice of the intention to introduce this Act, setting forth the general
substance of this Act, has been published as provided by law, and the notice
and a copy of this Act have been furnished to all persons, agencies, officials,
or entities to which they are required to be furnished under Section 59,
Article XVI, Texas Constitution, and Chapter 313, Government Code. 

Act of May 28, 2003, at § 21(a). 
          As noted by the Fourteenth District Court of Appeals, "The enrolled bill rule has
been repeatedly stated to be that a duly authenticated, approved, and enrolled statute
imports absolute verity and is conclusive that an act was passed in every respect according
to constitutional requirements." Beckendorff v. Harris-Galveston Coastal Subsidence Dist.,
558 S.W.2d 75, 78 (Tex. Civ. App.—Houston [14th Dist.] 1977), writ ref'd n.r.e., 563
S.W.2d 239 (Tex. 1978); see, e.g., Jackson v. Walker, 121 Tex. 303, 49 S.W.2d 693, 694
(1932); Wallace v. Ranger Hosp. Dist., 474 S.W.2d 568, 569 (Tex. Civ. App.—Eastland
1971, writ ref'd n.r.e.); Moore v. Edna Hosp. Dist., 449 S.W.2d 508, 514–15 (Tex. Civ.
App.—Corpus Christi 1969, writ ref'd n.r.e.); Ellison v. Tex. Liquor Control Bd., 154 S.W.2d
322, 326 (Tex. Civ. App.—Galveston 1941, writ ref'd). 
          SOS contends the Texas Supreme Court abandoned the enrolled bill rule in Ass'n
of Tex. Prof'l Educators v. Kirby, 788 S.W.2d 827 (Tex. 1990), and confined the
above-cited decisions to the facts.


 In Kirby, the official legislative journals, testimony of
the presiding officers of both houses, and a stipulation signed by the attorney general
indicated that the enrolled bill signed by the governor was not the bill passed by the
Legislature. Id. at 830. We note the Texas Supreme Court questioned the wisdom of the
enrolled bill rule and acknowledged that the rule is "contrary to modern legal thinking"
which disfavors conclusive presumptions which can produce results inconsistent with the
actual facts. Id. at 829. The court noted, "[T]he present tendency favors giving the
enrolled version only prima facie presumptive validity, and a majority of states recognize
exceptions to the enrolled bill rule." Id. However, the court did not explicitly overrule the
enrolled bill rule. Id. The Texas Supreme Court only recognized a narrow exception when
conclusive evidence shows "the enrolled bill signed by the governor was not the bill passed
by the legislature," but did not otherwise modify the enrolled bill rule. Id. at 830. The
Texas Supreme Court held "an exception to the enrolled bill rule must exist to avoid
elevating clerical error over constitutional law." Id. at 829–30. This case is clearly
distinguishable from Kirby since the complaint here is not that the bill is not the same bill
passed into law, but rather that the findings of the bill were incorrect. Thus, this case does
not fall within the narrow exception recognized by the Texas Supreme Court in Kirby.
          In Beckendorff, the plaintiffs challenged the creation of the Harris-Galveston Coastal
Subsidence District, a conservation and reclamation district, alleging that a copy of the bill
had not been delivered to the governing body of each political subdivision within the
proposed district, as required by Article XVI, Section 59(e) of the Texas Consititution. 
Beckendorff, 558 S.W.2d at 77. While noting in its opinion that the enrolled bill rule is "too
broad," the Fourteenth District Court of Appeals determined it was bound by precedent. 
Id. at 78–79. The court held that the authenticated statute was the best evidence that the
required formalities were observed and that any extrinsic evidence to the contrary was
"absolutely prohibited." Id. We agree with the reasoning of the Fourteenth District in
Beckendorff.
          Although this case illustrates the dangers of the enrolled bill rule which may produce
results inconsistent with the actual facts, the enrolled bill rule requires the exclusion of the
evidence. The enrolled bill rule has yet to be abandoned by the Texas Supreme Court,
and we are bound by precedent until the Texas Supreme Court decides to modify or create
additional exceptions to the rule. The trial court, therefore, did not abuse its discretion in
excluding the evidence challenging whether the notice provisions of Article XVI,
Section 59(e) of the Texas Constitution were met. 
III.      SOS Failed to Show an Unconstitutional Delegation of Power
          In its third and fourth points of error, SOS contends the trial court committed
reversible error by excluding evidence relating to whether House Bill 3565 contained an
unconstitutional delegation of power. SOS advanced two arguments: 1) if Lazy 9 is a
public entity, there are no reasonable standards to guide the agency in exercising the
delegation, and 2) if Lazy 9 is a private entity, the delegation is unconstitutional under the
standards of Tex. Boll Weevil Eradication Found., Inc. v. Lewellen, 952 S.W.2d 454 (Tex.
1997). 
          When determining if the trial court committed reversible error in excluding evidence,
we examine the entire record to determine whether the trial court committed error that
probably resulted in an improper judgment. Penny, 160 S.W.3d at 235; see also Tex. R.
App. P. 44.1(a); McCraw v. Maris, 828 S.W.2d 756, 758 (Tex. 1992). Consequently, a
successful challenge to an evidentiary ruling requires the complaining party to show the
judgment turned on the particular evidence excluded. Able, 35 S.W.3d at 617; Alvarado,
897 S.W.2d at 753–54. This "turns on" test is not a "but for" test, but rather a "probable"
test, such that the appellant must show that the error was reasonably calculated to cause
and probably did cause the rendition of an improper judgment. McCraw, 828 S.W.2d at
758. We will reverse the trial court's evidentiary ruling only when the error is controlling on
a material issue dispositive to the case and probably caused the rendition of an improper
judgment. Peeler, 146 S.W.3d at 773; Able 35 S.W.3d at 617; see also Tex. R. App. P.
44.1.
          If Lazy 9 is a public entity, SOS argues the delegation is unconstitutional because
the Legislature failed to provide any standards to guide Lazy 9 in exercising the delegation. 
In their private delegation argument, SOS contends Lazy 9 is in reality a private
organization, rather than a public entity, and the delegation of the power to divide into
multiple districts is an unconstitutional delegation of legislative power to a private entity. 
          Although SOS filed numerous offers of proof,


 SOS failed to direct this Court to the
specific exhibits or depositions it contends were wrongfully excluded. Other than
conclusory assertions concerning what the excluded evidence would have proved, SOS
fails to cite to any of the offers of proof. Even if the trial court abused its discretion in
excluding the evidence,


 SOS has not shown the exclusion probably caused the rendition
of an improper judgment.


 
          A.       Exclusion of Evidence that Lazy 9 is a Private Entity
          Even if the trial court erred in excluding the evidence, SOS has failed to show the
judgment turned on the evidence excluded. The standard to determine whether a
delegation is unconstitutional depends on whether an entity is public or private. See
Lewellen, 952 S.W.2d at 470; F.M. Props. Operating Co., 22 S.W.3d at 877. While
acknowledging this determination is often difficult, the Texas Supreme Court noted in
Lewellen that "courts have universally treated a delegation as private where 'interested
groups have been given authoritative powers of determination, usually in conjunction with
a public administrative agency.'" Lewellen, 952 S.W.2d at 471. 
          SOS contends the trial court erred in preventing it from proving the directors of
Lazy 9 are so closely linked to the developer as to be indistinguishable. However, SOS
fails to point this Court toward the offers of proof which could prove this allegation. See
Alvarado, 897 S.W.2d at 753–54. SOS argues it is not required to provide a "detailed
recitation," but fails to cite any caselaw for that proposition. SOS has failed to show the
exclusion of evidence probably caused the trial court to incorrectly find that Lazy 9 is a
public entity.


 
          B.       Exclusion of Evidence Concerning the Lack of Reasonable Standards
          When the Legislature delegates powers to a governmental entity, the Legislature
must establish reasonable standards to guide the agency in exercising those powers. 
F.M. Props. Operating Co., 22 S.W.3d at 873. SOS contends the only standard
enumerated by the Legislature is that the division cannot result in a district of less than 100
acres. This allegation, though, is incorrect. The bill requires that the division must occur
pursuant to an election, provide notice, and comply with other restrictions.


 SOS has
failed to show the excluded evidence probably caused the trial court to improperly conclude
the Legislature provided reasonable standards to guide Lazy 9 in exercising the power to
divide.
          C.       Exclusion of Evidence as to Whether the Delegation was a Private
Delegation 

          SOS contends the trial court committed reversible error in excluding evidence that
the delegation of authority to divide was an unconstitutional private delegation. In Lewellen,
the Texas Supreme Court set forth eight factors to be considered when determining if the
Legislature made an unconstitutional delegation of power to a private entity.


 The Texas
Supreme Court did note that not all private delegations are unconstitutional and many can
be of immense benefit. Id. at 469. SOS fails to direct us to any excluded evidence which
would have been material to this determination. As such, SOS has failed to show the trial
court's conclusions turned on the particular evidence excluded. 
IV.      No Abuse of Discretion in Awarding Attorney's Fees
          SOS contends the award of attorney's fees is improper because 1) Lazy 9 filed a
mirror image declaratory judgment; 2) the trial court abused its discretion in finding the
award just and equitable; and 3) we should reverse the trial court on the merits. Because
the prohibition against mirror image declaratory judgments does not apply under the facts
of this case, and because the trial court did not abuse its discretion in finding the award just
and equitable, we affirm the award of attorney's fees.
          A.       SOS Failed to Preserve Error
          Lazy 9 contends SOS has "waived" any challenge to the attorney's fees as a "mirror-image" declaratory judgment. SOS has failed to direct us to where in the record it made this
argument to the trial court. "As a prerequisite to presenting a complaint for appellate review,
the record must show that: (1) the complaint was made to the trial court by a timely request,
objection, or motion . . . ." Tex R. App. P. 33.1(a). Error has not been preserved for our
review concerning the mirror-image argument. However, error has been preserved
concerning whether the award was just and equitable. 
          B.       Mirror-Image Declaratory Judgment
          Even if error had been preserved, the trial court did not err in awarding attorney's
fees. SOS cites Flagship Hotel, Ltd. v. City of Galveston, 117 S.W.3d 552, 566 (Tex.
App.—Texarkana 2003, pet. denied); Lyco Acquisition 1984 Ltd. P'ship v. First Nat'l Bank
of Amarillo, 860 S.W.2d 117, 120 (Tex. App.—Amarillo 1993, writ denied); Fowler v.
Resolution Trust Corp., 855 S.W.2d 31, 37 (Tex. App.—El Paso 1993, no writ); and In re
Estate of Kidd, 812 S.W.2d 356, 359 (Tex. App.—Amarillo 1991, writ denied), for the
proposition that a mirror-image declaratory judgment brought for the sole purpose of
attorney's fees is improper. The cited cases are clearly distinguishable from this case. 
          When a party brings a declaratory judgment action by way of a counterclaim or
amended petition and the declaratory judgment involves only issues already raised by the
original claim, the party is not entitled to an award of attorney's fees. Adams v. First Nat'l
Bank of Bells/Savoy, 154 S.W.3d 859, 873 (Tex. App.—Dallas 2005, no pet.); Flagship
Hotel, Ltd., 117 S.W.3d at 566. The reason for this prohibition is to prevent a declaratory
relief plea simply to pave the way to recover attorney's fees. Hartford Cas. Ins. Co. v.
Budget Rent-A-Car Sys., Inc., 796 S.W.2d 763, 772 (Tex. App.—Dallas 1990, writ denied). 
          This case is distinguishable because SOS brought its claims as a declaratory
judgment. The rule, that a mirror-image counterclaim for declaratory relief will not support
an award of attorney's fees, only applies when a plaintiff does not request declaratory relief. 
Once a plaintiff claims relief under the Declaratory Judgments Act, the mirror-image rule
does not prohibit the trial court from awarding attorney's fees even if the defendant's
counterclaim for declaratory relief only duplicates the claims already raised. First City Nat'l
Bank of Midland v. Concord Oil Co., 808 S.W.2d 133, 138 (Tex. App.—El Paso 1991, no
writ). Under the Declaratory Judgments Act, the trial court can award attorney's fees which
are just and equitable. There is no requirement attorney's fees must be awarded to the
party bringing the suit. Either party may obtain attorney's fees regardless of which party is
affirmatively seeking relief. Hartford Cas. Ins. Co., 796 S.W.2d at 771; Knighton v. Int'l Bus.
Machs. Corp., 856 S.W.2d 206, 210 (Tex. App.—Houston [1st Dist.] 1993, writ denied). 
Even if the mirror-image declaratory judgment action was improper, Lazy 9 could still
recover attorney's fees because SOS brought its claims as a declaratory judgment action. 
Because either party could obtain attorney's fees, the trial court did not abuse its discretion
in awarding such fees to Lazy 9.
          C.       Award of Attorney's Fees Just and Equitable
          SOS also contends the award of attorney's fees is not just and equitable.


 SOS
argues that ordering a local nonprofit organization to pay an arm of the local government
attorney's fees is not equitable and just. A prevailing party in a declaratory judgment action
is not entitled to attorney's fees simply as a matter of law; entitlement depends on what is
equitable and just, and the trial court's power is, in that respect, discretionary. Sharp v.
Hobart Corp., 957 S.W.2d 650, 654 (Tex. App.—Austin 1998, no pet.); Unified Loans, Inc.
v. Pettijohn, 955 S.W.2d 649, 654 (Tex. App.—Austin 1997, no pet.). Because reasonable
minds can differ concerning whether the attorney's fees are just and equitable, we cannot
say the trial court abused its discretion in awarding such fees to Lazy 9.
V.       Trial Court Abused its Discretion in Sanctioning SOS' Attorney
          SOS and Bunch challenge the trial court's assessment of sanctions against Bunch. 
According to Bunch, the trial court erred in finding the suit was frivolous and brought for an
improper purpose. The contentions pursued by SOS in this suit clearly had at least a
reasonable basis in the law and the facts. As such, the suit was not frivolous. We also find
that the trial court abused its discretion in finding that Bunch brought the suit for an
"improper purpose." It was, therefore, error for the trial court to assess sanctions against
Bunch.
          Sanctions for filing frivolous pleadings are available under Chapter 10 of the Texas
Civil Practice and Remedies Code or under Rule 13 of the Texas Rules of Civil Procedure.


 
A trial court's Rule 13 sanction is reviewed for an abuse of discretion. Downer v.
Aquamarine Operators, Inc., 701 S.W.2d 238, 241–42 (Tex. 1985); Am. Flood Research,
Inc. v. Jones, No. 05-0271, 2006 Tex. LEXIS 436 (Tex. May 5, 2006). "A trial court's failure
to specify the good cause for sanctions in a sanction order may be an abuse of discretion." 
Gaspard v. Beadle, 36 S.W.3d 229, 239 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). 
Sanctions should only be assessed ''in those egregious situations where the worst of the
bar uses our honored system for ill motive without regard to reason and the guiding
principles of the law.'' Dyson Descendant Corp. v. Sonat Exploration Co., 861 S.W.2d 942,
951 (Tex. App.—Houston [1st Dist.] 1993, no writ). Further, sanctions should not be used
as "a weapon . . . to punish those with whose intellect or philosophic viewpoint the trial court
finds fault." Tarrant County v. Chancey, 942 S.W.2d 151, 154–55 (Tex. App.—Fort Worth
1997, no writ).
          A trial court abuses its discretion if it acts "without reference to any guiding rules and
principles," such that its ruling is arbitrary or unreasonable. Cire v. Cummings, 134 S.W.3d
835, 839 (Tex. 2004). When determining if the trial court abused its discretion, we must
ensure that the sanctions were appropriate or just. Id. The Texas Supreme Court has
articulated a two-part inquiry that we should conduct in making this determination. Id. First,
we must ensure the punishment was imposed on the true offender and tailored to remedy
any prejudice caused. Id. Second, we must make certain that less severe sanctions would
not have been sufficient. Id. We will review sanctions under Chapter 10 by the same
standard.
          The trial court specified in the judgment that sanctions were assessed "pursuant to
Chapter 10 of the Texas Civil Practice and Remedies Code." "A court that determines that
a person has signed a pleading or motion in violation of Section 10.001 may impose a
sanction on the person, a party represented by the person, or both." Tex. Civ. Prac. & Rem.
Code Ann. § 10.004(a). Section 10.001 provides:
The signing of a pleading or motion as required by the Texas Rules of
Civil Procedure constitutes a certificate by the signatory that to the signatory's
best knowledge, information, and belief, formed after reasonable inquiry:
 
(1)the pleading or motion is not being presented for any
improper purpose, including to harass or to cause unnecessary delay
or needless increase in the cost of litigation;
 
(2)each claim, defense, or other legal contention in the
pleading or motion is warranted by existing law or by a nonfrivolous
argument for the extension, modification, or reversal of existing law or
the establishment of new law;
 
(3)each allegation or other factual contention in the pleading
or motion has evidentiary support or, for a specifically identified
allegation or factual contention, is likely to have evidentiary support
after a reasonable opportunity for further investigation or discovery;
and
 
(4)each denial in the pleading or motion of a factual
contention is warranted on the evidence or, for a specifically identified
denial, is reasonably based on a lack of information or belief.
 
Tex. Civ. Prac. & Rem. Code Ann. § 10.001 (Vernon 2002). The trial court found that Bunch
signed and filed the suit for an improper purpose and that both the notice and
unconstitutional delegation arguments were frivolous. 
          A.       Discretion Abused in Finding SOS' Claims Frivolous
          Although SOS did not ultimately succeed on the merits, the lawsuit was not frivolous. 
As long as the lawsuit had a "reasonable basis in law and constituted an informed, good-faith challenge," it was not frivolous. See Gen. Elec. Credit Corp. v. Midland Cent. Appraisal
Dist., 826 S.W.2d 124, 125 (Tex. 1991) (per curiam). A lawsuit is not frivolous if it is based
on a good-faith argument for the extension, modification, or reversal of existing law. 
Donwerth v. Preston II Chrysler-Dodge, Inc., 775 S.W.2d 634, 637 (Tex. 1989); see Herring
v. Welborn, 27 S.W.3d 132, 143 (Tex. App.—San Antonio 2000, pet. denied); Campos v.
Inv. Mgmt. Props., Inc., 917 S.W.2d 351, 355–56 (Tex. App.—San Antonio 1996, writ
denied). 
          SOS presented an argument, with a reasonable basis in the law, advocating reversal
of the enrolled bill rule. As discussed above, the Fourteenth District Court of Appeals and
the Texas Supreme Court have both criticized the current form of the enrolled bill rule. If
the enrolled bill rule did not bar introduction of evidence challenging the legislative finding,
SOS had evidence showing the notice was not sufficient. The notice simply stated that a
water district entitled "Lazy Nine Municipal Utility District" would be created in Travis County. 
Specifically, the notice, published in the Austin American-Statesman March 2, 2003,
provided as follows:
Pursuant to Tex. Gov't Code Ann. Sec. 313.002, this is to give notice of intent
to introduce in the 78th Texas Legislature, Regular Session, a bill to be
entitled "An Act Relating to the creation, organization, administration, powers,
duties, operation, and financing of Lazy Nine Municipal Utility District" of
Travis County.
 
This notice does not specify where in Travis County the district would be created or that the
district would be delegated power to create new districts. Entirely omitted from the notice
is any information in relation to the district's size, powers, and duties, or the fact that Lazy 9
could divide, a characteristic not typical of municipal utility districts. In addition, SOS offered
evidence that the Commissioners Court of Travis County was not notified thirty days in
advance of the filing of the original bill. Although SOS failed to prove that the delegation of
authority to divide was unconstitutional, the argument had a reasonable basis in the law. 
We conclude the trial court abused its discretion in finding the suit was groundless.
          B.       Failure to Rebut Presumption of Good Faith
          Although Rule 13 requires a party to have filed a groundless pleading brought in bad
faith or a groundless pleading for harassment, sanctions under Chapter 10 can be awarded
if the suit was filed for an improper purpose, even if the suit was not frivolous. See Alpert
v. Crain, Caton & James, P.C., 178 S.W.3d 398, 411–12 (Tex. App.—Houston [1st Dist.]
2005, (2) pets. denied); compare Tex. R. Civ. P. 13 with Tex. Civ. Prac. & Rem. Code Ann.
§ 10.001. Under the facts of this case, however, there is insufficient evidence of an
improper purpose.
          We construe the phrase "improper purpose" as the equivalent of "bad faith" under
Rule 13. See Tex. R. Civ. P. 13; cf. Elwell v. Mayfield, No. 10-04-00322-CV, 2005 Tex. App.
LEXIS 6356, at *17 (Tex. App.—Waco Aug. 10, 2005, pet. denied) ("nonfrivolous"
requirement is the same as the "good faith" requirement). Courts must presume that
pleadings are filed in good faith. GTE Commc'n Sys. Corp. v. Tanner, 856 S.W.2d 725,
731 (Tex. 1993). The party seeking the sanctions bears the burden of overcoming the
presumption of good faith in the filing of pleadings. Id. Under Rule 13, "bad faith'' requires
the conscious doing of a wrong for a dishonest, discriminatory, or malicious purpose. Stites
v. Gillum, 872 S.W.2d 786, 794–96 (Tex. App.—Fort Worth 1994, writ denied). 
          The trial court concluded Bunch filed frivolous claims for an improper purpose,
including "the effort to prevent the scheduled June 30, 2004 closing of a real-estate
transaction by a non-party Buyer and non-party Sellers." Although there was a considerable
amount of evidence introduced at the hearing on sanctions, the evidence failed to overcome
the presumption of good faith. On June 30, the day after the lawsuit was filed, a sale of the
property within the district was scheduled to close. Lazy 9 introduced evidence that,
because of the lawsuit, the property did not close as scheduled and the developers were
required to come up with $6 million more in equity and had to pay an additional $600,000.00
in interest. Although the evidence presented supports an inference that SOS filed suit in
order to delay or prevent the closing and inflict economic damage, the evidence also
supports other inferences. On the day SOS filed suit, the Travis County Commissioners
Court was considering a preliminary plat for a portion of the property within the boundaries
of the District. Bunch testified the filing of the lawsuit was due to the county commissioners
court hearing, and was not for any improper purpose. There is no evidence supporting the
finding of bad faith other than the timing of the suit.


 Under the circumstances of this case,
Lazy 9 failed to overcome the presumption of good faith. Therefore, the trial court abused
its discretion. 
          We reverse the trial court's assessment of sanctions against Bunch.
Conclusion
          The trial court erred in its reliance on the quo warranto doctrine and the Texas Water
Code in finding that SOS lacked standing to bring this suit. The trial court, however, did not
err in excluding evidence relating to the lack of notice, because the enrolled bill rule bars
the introduction of such evidence. Even if the trial court erred in excluding evidence
concerning SOS' unconstitutional delegation of power argument, SOS has failed to show
that the exclusion probably caused the rendition of an improper judgment. Further, the trial
court did not abuse its discretion in awarding attorney's fees to Lazy 9. Because the suit
was not frivolous and Lazy 9 did not rebut the presumption that the pleadings were in good
faith, the trial court abused its discretion in assessing sanctions against Bunch. 
          For the reasons stated, we reverse the sanctions against Bunch. Therefore, we
modify the trial court's judgment to delete the award of sanctions. As modified, we affirm
the judgment.
 
 
 
                                                                Donald R. Ross
                                                                Justice
 
Date Submitted:      April 18, 2006
Date Decided:         June 1, 2006