In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00058-CV
______________________________


SAVE OUR SPRINGS ALLIANCE, INC., AND
WILLIAM G. BUNCH, Appellants
 
V.
 
LAZY NINE MUNICIPAL UTILITY DISTRICT, 
BY AND THROUGH ITS BOARD OF DIRECTORS, AND
C. A. ELDER, VINCENT HUEBINGER, BILL SIMPSON,
AND CORD SHIFLET, IN THEIR OFFICIAL CAPACITIES
AS LAZY NINE MUNICIPAL UTILITY DISTRICT
BOARD MEMBERS, Appellees


                                              

On Appeal from the 250th Judicial District Court
Travis County, Texas
Trial Court No. GN 402045


                                                 


Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross


O P I N I O N

          Save Our Springs Alliance, Inc. (SOS) brought suit against Lazy 9 Municipal Utility
District (Lazy 9), challenging the constitutionality of the legislative bill creating that district.


 
SOS advanced, in essence, two arguments as to why the bill was unconstitutional: 1) the
bill's author provided inadequate notice of the bill, and 2) the bill makes an unconstitutional
delegation of authority to Lazy 9 by allowing Lazy 9 to create additional districts within its
area. In response, Lazy 9 argues that the formation of the district could only be challenged
in a quo warranto proceeding and that the enrolled bill rule bars the admission of extrinsic
evidence. 
          Following a bench trial, the trial court found the bill to be constitutional, awarded
$294,000.00 in attorney's fees to Lazy 9, and sanctioned SOS' attorney, William G. Bunch,
in the amount of $5,000.00 for filing a frivolous lawsuit and for filing a lawsuit for an
improper purpose. SOS and Bunch appeal, raising six points of error challenging the trial
court's exclusion of evidence based on the quo warranto doctrine and the enrolled bill rule,
finding the delegation of authority to Lazy 9 constitutional, awarding attorney's fees to
Lazy 9, and assessing sanctions against Bunch. 
          We conclude the quo warranto doctrine did not prevent SOS from bringing this suit. 
The trial court did not err in excluding evidence relating to the lack of notice because the
enrolled bill rule bars the introduction of such evidence. Even if the trial court erred in
excluding evidence relating to whether the bill contains an unconstitutional delegation, SOS
has failed to show that the evidence probably caused the rendition of an improper
judgment. Last, we conclude the trial court did not err in awarding attorney's fees to Lazy 9
but did err in assessing sanctions against Bunch. We, therefore, affirm in part and reverse
in part.
Background
          Article XVI, Section 59 of the Texas Constitution authorizes the Legislature to create
conservation and reclamation districts. Tex. Const. art. XVI, § 59. The Texas Legislature
has provided for the creation of a number of kinds of conservation and reclamation
districts. Of the numerous types of districts, municipal utility districts are the most popular. 
See 36A David B. Brooks, Texas Practice: County and Special District Law § 46.71,
228–29 (2002). Such districts are generally created to provide water, sewer, drainage, and
other services. 
          Municipal utility districts may be created in one of two ways: by the Texas
Commission on Environmental Quality (TCEQ) or by a specific act of the Texas
Legislature. See 36A David B. Brooks, Texas Practice: County and Special District
Law § 46.6, 124–25 (2002). Municipal districts created by the TCEQ are called "general
law districts," and municipal utility districts created by a specific act of the Texas
Legislature are called "special law districts." See id. at 123. The Legislature is not limited
in the manner in which a special law district is organized or governed. Id. Before the
creation of a district, notice must be given of such intention. Section 59(e) of the Texas
Constitution provides as follows:
No law creating a conservation and reclamation district shall be passed
unless, at the time notice of the intention to introduce a bill is published as
provided in Subsection (d) of this section, a copy of the proposed bill is
delivered to the commissioners court of each county in which said district or
any part thereof is or will be located and to the governing body of each
incorporated city or town in whose jurisdiction said district or any part thereof
is or will be located. Each such commissioners court and governing body
may file its written consent or opposition to the creation of the proposed
district with the governor, lieutenant governor, and speaker of the house of
representatives. Each special law creating a conservation and reclamation
district shall comply with the provisions of the general laws then in effect
relating to consent by political subdivisions to the creation of conservation
and reclamation districts and to the inclusion of land within the district. 

Tex. Const. art. XVI, § 59(e). 
          Lazy 9 was created by the Texas Legislature through House Bill 3565 during the
78th Legislature's regular session. See Act of May 28, 2003, 78th Leg., R.S., ch. 1158,
2003 Tex. Gen. Laws 3268. The Act declared Lazy 9 to be a "governmental agency and
a political subdivision of this state." See id. at § 2(b). In a twelve-page description, the Act
establishes the boundaries of the district encompassing 1,719 acres. Id. at § 4. The
district skirts the edge of, but avoids, the extraterritorial jurisdiction of the City of Austin. 
When the bill was introduced, the land was owned by a number of individuals who were
heirs to the Davenport Estate. On June 29, 2004, before the bill took effect, the land was
purchased by Forest Creek Sweetwater Development, Ltd. Lazy 9 was created for the
purpose of providing utilities and other services for a development planned by Sweetwater. 
In fact, Brad Whittingham, one of the developers, testified Sweetwater could not have
afforded to develop the land without the creation of a municipal utility district. 
          SOS is an environmental organization with over 3,000 members, including members
living along Bee Creek located downstream from Lazy 9, as well as members living
adjacent to Lazy 9 in the Little Barton Creek Watershed. SOS originally focused its
activities on the preservation of the Little Barton Creek Watershed, but has broadened its
objectives in recent years to trying to protect a larger swath of the Texas hill-country
environment by attempting to protect sensitive watersheds which provide drinking water
to the City of Austin. Lazy 9 principally lies within the Lake Travis Watershed. Although
only a few acres of Lazy 9 are currently within the Little Barton Creek Watershed, Lazy 9
has sought a certificate of convenience and necessity


 to provide water to another
development owned by the developer which is located in the Little Barton Creek
Watershed. 
          House Bill 3565 took effect September 1, 2003. In the bill, the Legislature appointed
five temporary directors to the Lazy 9 board of directors and required them to hold an
election to confirm the establishment of the district and its initial directors. See Act of
May 28, 2003, at §§ 8–9. The temporary directors held an organizational meeting
September 11, 2003. 
          SOS filed suit against Lazy 9 June 29, 2004, alleging, among other things, that the
notice of the bill was unconstitutional and that the bill made an unconstitutional delegation
of power. At the trial on the merits, the court refused to admit evidence concerning the
inadequate notice or the unconstitutional delegation of power. SOS objected to these
rulings and made numerous and voluminous offers of proof. 
          In its findings of fact and conclusions of law, the trial court found that SOS lacked
standing to challenge the constitutionality of the notice or to seek relief on its claims that
Lazy 9 "is not a real district." The court also found that the enrolled bill rule prohibits
challenging the adequacy of the notice and that the notice met all the requirements of
Article XVI, Section 59 of the Texas Constitution. The trial court further held that Lazy 9
was a validly created governmental agency and that the delegation of the power to divide
into two or more districts was accompanied by reasonable standards to guide the exercise
of such power and, therefore, was a proper power. In addition, the trial court found that
the lawsuit lacked merit and found that Bunch filed the lawsuit for an improper purpose. 
The trial court awarded $199,000.00 in attorney's fees for trial, $45,000.00 for appeal,
$20,000.00 if review is sought in the Texas Supreme Court, and $30,000.00 if review is
granted by the Texas Supreme Court.


 Last, the trial court awarded sanctions against
Bunch in the amount of $5,000.00.
I.        Could SOS Bring this Lawsuit?
          Lazy 9 proposes two arguments as to why SOS could not bring suit to challenge
House Bill 3565. First, Lazy 9 contends SOS lacked standing because this suit must be
brought as a quo warranto proceeding. Second, Lazy 9 contends the Texas Water Code
prohibited SOS from bringing suit. We conclude that the suit was not required to be
brought as a quo warranto proceeding and that the Texas Water Code prohibition does not
apply to special law districts. SOS, therefore, had standing to bring this suit.
          A.       Quo Warranto 
          Quo warranto is an ancient common-law writ "in the nature of a writ of right for the
king against a person who claimed or usurped any office, franchise, or liberty, to inquire
by what authority he supported his claim, in order to determine the right." State ex rel.
Colleyville v. City of Hurst, 519 S.W.2d 698, 700 (Tex. Civ. App.—Fort Worth 1975, writ
ref'd n.r.e.). A writ of quo warranto is an extraordinary remedy available to decide issues
concerning the proper person entitled to a public office and exercise its functions. State
ex rel. Angelini v. Hardberger, 932 S.W.2d 489, 490 (Tex. 1996). Quo warranto is also
available to question the existence of a public corporation or district and its right to act. 
See Village of Lakeway v. Lakeway Mun. Util. Dist. No. 1, 657 S.W.2d 912, 915 (Tex.
App.—Austin 1983, writ ref'd n.r.e.). In general, the legality of a public corporation or
district must be challenged through a quo warranto proceeding.


 
          SOS contends that quo warranto proceedings are not required when a district is
challenged on constitutional grounds. In support of this contention, SOS cites FM Props.
Operating Co. v. City of Austin, 22 S.W.3d 868 (Tex. 2000) (finding "water quality
protection zones" unconstitutional); Barshop v. Medina County Underground Water
Conservation Dist., 925 S.W.2d 618 (Tex. 1996); and Sw. Travis County Water Dist. v. City
of Austin, 64 S.W.3d 25 (Tex. App.—Austin 2000, pet. dism'd) (finding statute
unconstitutional). However, none of these cases explicitly state such an exception. While
all these cases were decided on constitutional grounds, none discuss whether the
challenges could only be brought by quo warranto proceedings. 
          Lazy 9 contends that most of these cases were brought by governmental agencies. 
However, as SOS points out, none of these governmental agencies possessed authority
to bring quo warranto proceedings. Authority to bring quo warranto proceedings is limited
to the Texas Attorney General, county attorneys, and district attorneys. See Tex. Civ.
Prac. & Rem. Code Ann. § 66.001 (Vernon 1997).
          One exception to the general rule—that challenges to the creation of a water district
must be brought through quo warranto proceedings—is that acts, which are void, can be
challenged in proceedings other than quo warranto proceedings. In Alexander Oil, 825
S.W.2d at 436, the Texas Supreme Court explicitly upheld the line of authority holding quo
warranto is not the sole method for attack if the statute creating the authority is void. See
Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer, 904 S.W.2d 656, 658 (Tex. 1995);
Gonzales v. Concerned Citizens of Webberville, 173 S.W.3d 112, 116 (Tex. App.—Austin
2005, pet. denied); Durham v. Crutchfield, 578 S.W.2d 438, 440 (Tex. Civ.
App.—Texarkana 1979, writ ref'd n.r.e.). Acts which are merely voidable rather than void,
such as procedural irregularities, must be challenged through quo warranto proceedings
brought by the State. See Alexander Oil, 825 S.W.2d at 439; Gonzales, 173 S.W.2d at
115–16; Durham, 578 S.W.2d at 440; City of Irving v. Callaway, 363 S.W.2d 832, 834
(Tex. Civ. App.—Dallas 1962, writ ref'd n.r.e.). 
          The difference, however, between a void act and a voidable act is not clearly
defined. In Laidlaw Waste, the Texas Supreme Court, citing only Alexander Oil, 825
S.W.2d at 436, held that a private party can collaterally attack a statute as being wholly
void, but it noted in dicta that a party has no standing to challenge a statute on "procedural
grounds, such as alleged failures to meet the notice and signature requirements . . . ."


 
Laidlaw Waste Sys., 904 S.W.2d at 658. Although Laidlaw Waste included notice as a
"procedural" issue which must be brought through quo warranto proceedings, we conclude
the instant case is distinguishable because the notice is constitutionally required. We
believe that the dicta in Laidlaw Waste referred to statutory notice rather than
constitutionally required notice. Texas courts have consistently held statutory notice
challenges must be brought through quo warranto proceedings. See City of Balch Springs
v. George F. Lucas Irrevocable Family Trust, 101 S.W.3d 116, 122 (Tex. App.—Dallas
2002, no pet.) (statutory notice claims must be brought through quo warranto); City of San
Antonio v. Hardee, 70 S.W.3d 207, 210 (Tex. App.—San Antonio 2001, no pet.) (statutory
notice claims must be brought through quo warranto). But without constitutionally required
notice, an act is void. An unconstitutional statute does not constitute color of law. Miller
v. Davis, 136 Tex. 299, 150 S.W.2d 973 (1941); City of Houston v. Rodehever, 615 S.W.2d
837, 839 (Tex. Civ. App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.). "A legislative Act
which contravenes the Constitution is a void Act. It amounts to nothing and accomplishes
nothing. . . . If an Act is unconstitutional, it is no law at all." Miller, 150 S.W.2d at 978. The
lack of constitutionally required notice results in a void act which can be challenged through
proceedings other than quo warranto proceedings. Likewise, SOS' argument—that the Act
makes an unconstitutional delegation of power—is also an allegation the Act is void. 
          Although challenges to the existence of water districts normally must be brought
through quo warranto proceedings, the allegation the bill lacked constitutionally required
notice and contained an unconstitutional delegation would, if true, result in a void act. 
Therefore, these issues can be challenged through means other than quo warranto
proceedings. The trial court erred in finding the bill could only be challenged through quo
warranto proceedings.
          B.       The Texas Water Code
           Lazy 9's second argument as to why SOS could not bring suit is that the Texas
Water Code provides that only the attorney general can bring suit to contest the creation
of a water district. We disagree. The Water Code's prohibition applies only to general law
districts.
          Section 49.066 of the Texas Water Code provides that no suit may be instituted in
any court of this State contesting "the validity of the creation and boundaries of a district
created under this code" except in a "suit brought by the State of Texas through the
attorney general." Tex. Water Code Ann. § 49.066(d), (e) (Vernon 2000). SOS advances
two arguments as to why Section 49.066 should not apply.
          First, SOS cites Bexar Metro. Water Dist. v. City of Bulverde, 156 S.W.3d 79 (Tex.
App.—Austin 2004, pet. denied), for the proposition that Section 49.066 only applies to
challenges to the original boundaries of a water district. While the Austin Court of Appeals
did state "[t]he third-party prohibition only applies to claims attacking the validity of a
legislative act creating a water district's boundaries,"


 the Austin court did not limit the
section when the quoted language is considered in context of the case. In Bexar Metro.
Water Dist., the Austin court held that a dispute concerning annexation boundaries could
be brought by private parties because the statute only prohibited challenging the
boundaries that existed when the district was created. The court's language was limited
because the suit only concerned a dispute over boundaries created by annexation. 
          Second, SOS contends Section 49.066 does not apply to this case because it only
applies to general law districts. We agree. Section 49.066 is located in the subsection
titled "General Law Districts." Further, the use of the qualifying language "created under
this code" indicates that the section applies only to general law districts. Although the
definition of "districts" likely includes special law districts,


 Section 49.066 qualifies the term
"district" with the phrase "created under this code." Only general law districts are created
by TCEQ under the procedures of the Water Code. See Tex. Water Code Ann.
§ 54.001–.812 (Vernon 2002 & Supp. 2005). Special law districts are created by specific
acts of the Texas Legislature. Section 49.066 does not apply to special law districts.



          Lazy 9 contends Section 49.066 applies to both general law districts and special law
districts, but cites no caselaw for this proposition. In addition, Lazy 9 contends Section
49.066 applies due to the language of the bill. Section 11 of House Bill 3565, the Act
creating Lazy 9, provides "[t]he district has all of the rights, powers, privileges, authority,
functions, and duties provided by the general law of this state, including Chapters 30, 49,
50, and 54, Water Code, applicable to municipal utility districts created under Section 59,
Article XVI, Texas Constitution." See Act of May 28, 2003, at § 11. We disagree that this
language makes Section 49.066 applicable to Lazy 9, a special law district.
          Section 49.066 applies only to districts created under the provisions of the Texas
Water Code. Because Lazy 9 was created by a special act of the Texas Legislature, the
section does not prohibit this suit. We reject Lazy 9's argument that Section 49.066
prohibits SOS from bringing this suit.
II.       The Enrolled Bill Rule Bars Introduction of Evidence
          SOS contends the trial court erred in excluding its evidence challenging whether the
notice provisions of Article XVI, Section 59(e) of the Texas Constitution have been met. 
The inclusion or exclusion of evidence is committed to the trial court's discretion; as such,
the appellate court reviews these issues under an abuse of discretion standard. Tex. Dep't
of Transp. v. Able, 35 S.W.3d 608, 617 (Tex. 2000); see also City of Brownsville v.
Alvarado, 897 S.W.2d 750, 753 (Tex. 1995); SunBridge Healthcare Corp. v. Penny, 160
S.W.3d 230, 239 (Tex. App.—Texarkana 2005, no pet.). A trial court abuses its discretion
when it rules without regard to any guiding rules or principles. Scottsdale Ins. Co. v. Nat'l
Emergency Servs., Inc., 175 S.W.3d 284, 297 (Tex. App.—Houston [1st Dist.] 2004, pet.
denied). We affirm a trial court's ruling if there is any legitimate basis for the ruling. 
Scottsdale Ins. Co., 175 S.W.3d at 297; Rogers v. Peeler, 146 S.W.3d 765, 773 (Tex.
App.—Texarkana 2004, no pet.). A trial court cannot abuse its discretion if it reaches the
right result, even for the wrong reasons. Luxenberg v. Marshall, 835 S.W.2d 136, 141–42
(Tex. App.—Dallas 1992, no writ). Lazy 9 contends the enrolled bill rule prohibits evidence
from being introduced relating to any deficiencies in the notice. We agree.
          The bill creating Lazy 9 provides that the notice requirements have been met. 
Section 21(a) of House Bill 3565 states:
The legal notice of the intention to introduce this Act, setting forth the general
substance of this Act, has been published as provided by law, and the notice
and a copy of this Act have been furnished to all persons, agencies, officials,
or entities to which they are required to be furnished under Section 59,
Article XVI, Texas Constitution, and Chapter 313, Government Code. 

Act of May 28, 2003, at § 21(a). 
          As noted by the Fourteenth District Court of Appeals, "The enrolled bill rule has
been repeatedly stated to be that a duly authenticated, approved, and enrolled statute
imports absolute verity and is conclusive that an act was passed in every respect according
to constitutional requirements." Beckendorff v. Harris-Galveston Coastal Subsidence Dist.,
558 S.W.2d 75, 78 (Tex. Civ. App.—Houston [14th Dist.] 1977), writ ref'd n.r.e., 563
S.W.2d 239 (Tex. 1978); see, e.g., Jackson v. Walker, 121 Tex. 303, 49 S.W.2d 693, 694
(1932); Wallace v. Ranger Hosp. Dist., 474 S.W.2d 568, 569 (Tex. Civ. App.—Eastland
1971, writ ref'd n.r.e.); Moore v. Edna Hosp. Dist., 449 S.W.2d 508, 514–15 (Tex. Civ.
App.—Corpus Christi 1969, writ ref'd n.r.e.); Ellison v. Tex. Liquor Control Bd., 154 S.W.2d
322, 326 (Tex. Civ. App.—Galveston 1941, writ ref'd). 
          SOS contends the Texas Supreme Court abandoned the enrolled bill rule in Ass'n
of Tex. Prof'l Educators v. Kirby, 788 S.W.2d 827 (Tex. 1990), and confined the
above-cited decisions to the facts.


 In Kirby, the official legislative journals, testimony of
the presiding officers of both houses, and a stipulation signed by the attorney general
indicated that the enrolled bill signed by the governor was not the bill passed by the
Legislature. Id. at 830. We note the Texas Supreme Court questioned the wisdom of the
enrolled bill rule and acknowledged that the rule is "contrary to modern legal thinking"
which disfavors conclusive presumptions which can produce results inconsistent with the
actual facts. Id. at 829. The court noted, "[T]he present tendency favors giving the
enrolled version only prima facie presumptive validity, and a majority of states recognize
exceptions to the enrolled bill rule." Id. However, the court did not explicitly overrule the
enrolled bill rule. Id. The Texas Supreme Court only recognized a narrow exception when
conclusive evidence shows "the enrolled bill signed by the governor was not the bill passed
by the legislature," but did not otherwise modify the enrolled bill rule. Id. at 830. The
Texas Supreme Court held "an exception to the enrolled bill rule must exist to avoid
elevating clerical error over constitutional law." Id. at 829–30. This case is clearly
distinguishable from Kirby since the complaint here is not that the bill is not the same bill
passed into law, but rather that the findings of the bill were incorrect. Thus, this case does
not fall within the narrow exception recognized by the Texas Supreme Court in Kirby.
          In Beckendorff, the plaintiffs challenged the creation of the Harris-Galveston Coastal
Subsidence District, a conservation and reclamation district, alleging that a copy of the bill
had not been delivered to the governing body of each political subdivision within the
proposed district, as required by Article XVI, Section 59(e) of the Texas Consititution. 
Beckendorff, 558 S.W.2d at 77. While noting in its opinion that the enrolled bill rule is "too
broad," the Fourteenth District Court of Appeals determined it was bound by precedent. 
Id. at 78–79. The court held that the authenticated statute was the best evidence that the
required formalities were observed and that any extrinsic evidence to the contrary was
"absolutely prohibited." Id. We agree with the reasoning of the Fourteenth District in
Beckendorff.
          Although this case illustrates the dangers of the enrolled bill rule which may produce
results inconsistent with the actual facts, the enrolled bill rule requires the exclusion of the
evidence. The enrolled bill rule has yet to be abandoned by the Texas Supreme Court,
and we are bound by precedent until the Texas Supreme Court decides to modify or create
additional exceptions to the rule. The trial court, therefore, did not abuse its discretion in
excluding the evidence challenging whether the notice provisions of Article XVI,
Section 59(e) of the Texas Constitution were met. 
III.      SOS Failed to Show an Unconstitutional Delegation of Power
          In its third and fourth points of error, SOS contends the trial court committed
reversible error by excluding evidence relating to whether House Bill 3565 contained an
unconstitutional delegation of power. SOS advanced two arguments: 1) if Lazy 9 is a
public entity, there are no reasonable standards to guide the agency in exercising the
delegation, and 2) if Lazy 9 is a private entity, the delegation is unconstitutional under the
standards of Tex. Boll Weevil Eradication Found., Inc. v. Lewellen, 952 S.W.2d 454 (Tex.
1997). 
          When determining if the trial court committed reversible error in excluding evidence,
we examine the entire record to determine whether the trial court committed error that
probably resulted in an improper judgment. Penny, 160 S.W.3d at 235; see also Tex. R.
App. P. 44.1(a); McCraw v. Maris, 828 S.W.2d 756, 758 (Tex. 1992). Consequently, a
successful challenge to an evidentiary ruling requires the complaining party to show the
judgment turned on the particular evidence excluded. Able, 35 S.W.3d at 617; Alvarado,
897 S.W.2d at 753–54. This "turns on" test is not a "but for" test, but rather a "probable"
test, such that the appellant must show that the error was reasonably calculated to cause
and probably did cause the rendition of an improper judgment. McCraw, 828 S.W.2d at
758. We will reverse the trial court's evidentiary ruling only when the error is controlling on
a material issue dispositive to the case and probably caused the rendition of an improper
judgment. Peeler, 146 S.W.3d at 773; Able 35 S.W.3d at 617; see also Tex. R. App. P.
44.1.
          If Lazy 9 is a public entity, SOS argues the delegation is unconstitutional because
the Legislature failed to provide any standards to guide Lazy 9 in exercising the delegation. 
In their private delegation argument, SOS contends Lazy 9 is in reality a private
organization, rather than a public entity, and the delegation of the power to divide into
multiple districts is an unconstitutional delegation of legislative power to a private entity. 
          Although SOS filed numerous offers of proof,


 SOS failed to direct this Court to the
specific exhibits or depositions it contends were wrongfully excluded. Other than
conclusory assertions concerning what the excluded evidence would have proved, SOS
fails to cite to any of the offers of proof. Even if the trial court abused its discretion in
excluding the evidence,


 SOS has not shown the exclusion probably caused the rendition
of an improper judgment.


 
          A.       Exclusion of Evidence that Lazy 9 is a Private Entity
          Even if the trial court erred in excluding the evidence, SOS has failed to show the
judgment turned on the evidence excluded. The standard to determine whether a
delegation is unconstitutional depends on whether an entity is public or private. See
Lewellen, 952 S.W.2d at 470; F.M. Props. Operating Co., 22 S.W.3d at 877. While
acknowledging this determination is often difficult, the Texas Supreme Court noted in
Lewellen that "courts have universally treated a delegation as private where 'interested
groups have been given authoritative powers of determination, usually in conjunction with
a public administrative agency.'" Lewellen, 952 S.W.2d at 471. 
          SOS contends the trial court erred in preventing it from proving the directors of
Lazy 9 are so closely linked to the developer as to be indistinguishable. However, SOS
fails to point this Court toward the offers of proof which could prove this allegation. See
Alvarado, 897 S.W.2d at 753–54. SOS argues it is not required to provide a "detailed
recitation," but fails to cite any caselaw for that proposition. SOS has failed to show the
exclusion of evidence probably caused the trial court to incorrectly find that Lazy 9 is a
public entity.


 
          B.       Exclusion of Evidence Concerning the Lack of Reasonable Standards
          When the Legislature delegates powers to a governmental entity, the Legislature
must establish reasonable standards to guide the agency in exercising those powers. 
F.M. Props. Operating Co., 22 S.W.3d at 873. SOS contends the only standard
enumerated by the Legislature is that the division cannot result in a district of less than 100
acres. This allegation, though, is incorrect. The bill requires that the division must occur
pursuant to an election, provide notice, and comply with other restrictions.


 SOS has
failed to show the excluded evidence probably caused the trial court to improperly conclude
the Legislature provided reasonable standards to guide Lazy 9 in exercising the power to
divide.
          C.       Exclusion of Evidence as to Whether the Delegation was a Private
Delegation 
 
          SOS contends the trial court committed reversible error in excluding evidence that
the delegation of authority to divide was an unconstitutional private delegation. In
Lewellen, the Texas Supreme Court set forth eight factors to be considered when
determining if the Legislature made an unconstitutional delegation of power to a private
entity.


 The Texas Supreme Court did note that not all private delegations are
unconstitutional and many can be of immense benefit. Id. at 469. SOS fails to direct us
to any excluded evidence which would have been material to this determination. As such,
SOS has failed to show the trial court's conclusions turned on the particular evidence
excluded. 
IV.      No Abuse of Discretion in Awarding Attorney's Fees
          SOS contends the award of attorney's fees is improper because 1) Lazy 9 filed a
mirror image declaratory judgment; 2) the trial court abused its discretion in finding the
award just and equitable; and 3) we should reverse the trial court on the merits. Because
the prohibition against mirror image declaratory judgments does not apply under the facts
of this case, and because the trial court did not abuse its discretion in finding the award just
and equitable, we affirm the award of attorney's fees.
          A.       SOS Failed to Preserve Error
          Lazy 9 contends SOS has "waived" any challenge to the attorney's fees as a "mirror-image" declaratory judgment. SOS has failed to direct us to where in the record it made
this argument to the trial court. "As a prerequisite to presenting a complaint for appellate
review, the record must show that: (1) the complaint was made to the trial court by a timely
request, objection, or motion . . . ." Tex R. App. P. 33.1(a). Error has not been preserved
for our review concerning the mirror-image argument. However, error has been preserved
concerning whether the award was just and equitable. 
          B.       Mirror-Image Declaratory Judgment
          Even if error had been preserved, the trial court did not err in awarding attorney's
fees. SOS cites Flagship Hotel, Ltd. v. City of Galveston, 117 S.W.3d 552, 566 (Tex.
App.—Texarkana 2003, pet. denied); Lyco Acquisition 1984 Ltd. P'ship v. First Nat'l Bank
of Amarillo, 860 S.W.2d 117, 120 (Tex. App.—Amarillo 1993, writ denied); Fowler v.
Resolution Trust Corp., 855 S.W.2d 31, 37 (Tex. App.—El Paso 1993, no writ); and In re
Estate of Kidd, 812 S.W.2d 356, 359 (Tex. App.—Amarillo 1991, writ denied), for the
proposition that a mirror-image declaratory judgment brought for the sole purpose of
attorney's fees is improper. The cited cases are clearly distinguishable from this case. 
          When a party brings a declaratory judgment action by way of a counterclaim or
amended petition and the declaratory judgment involves only issues already raised by the
original claim, the party is not entitled to an award of attorney's fees. Adams v. First Nat'l
Bank of Bells/Savoy, 154 S.W.3d 859, 873 (Tex. App.—Dallas 2005, no pet.); Flagship
Hotel, Ltd., 117 S.W.3d at 566. The reason for this prohibition is to prevent a declaratory
relief plea simply to pave the way to recover attorney's fees. Hartford Cas. Ins. Co. v.
Budget Rent-A-Car Sys., Inc., 796 S.W.2d 763, 772 (Tex. App.—Dallas 1990, writ denied). 
          This case is distinguishable because SOS brought its claims as a declaratory
judgment. The rule, that a mirror-image counterclaim for declaratory relief will not support
an award of attorney's fees, only applies when a plaintiff does not request declaratory
relief. Once a plaintiff claims relief under the Declaratory Judgments Act, the mirror-image
rule does not prohibit the trial court from awarding attorney's fees even if the defendant's
counterclaim for declaratory relief only duplicates the claims already raised. First City Nat'l
Bank of Midland v. Concord Oil Co., 808 S.W.2d 133, 138 (Tex. App.—El Paso 1991, no
writ). Under the Declaratory Judgments Act, the trial court can award attorney's fees which
are just and equitable. There is no requirement attorney's fees must be awarded to the
party bringing the suit. Either party may obtain attorney's fees regardless of which party
is affirmatively seeking relief. Hartford Cas. Ins. Co., 796 S.W.2d at 771; Knighton v. Int'l
Bus. Machs. Corp., 856 S.W.2d 206, 210 (Tex. App.—Houston [1st Dist.] 1993, writ
denied). Even if the mirror-image declaratory judgment action was improper, Lazy 9 could
still recover attorney's fees because SOS brought its claims as a declaratory judgment
action. Because either party could obtain attorney's fees, the trial court did not abuse its
discretion in awarding such fees to Lazy 9.
          C.       Award of Attorney's Fees Just and Equitable
          SOS also contends the award of attorney's fees is not just and equitable.


 SOS
argues that ordering a local nonprofit organization to pay an arm of the local government
attorney's fees is not equitable and just. A prevailing party in a declaratory judgment action
is not entitled to attorney's fees simply as a matter of law; entitlement depends on what is
equitable and just, and the trial court's power is, in that respect, discretionary. Sharp v.
Hobart Corp., 957 S.W.2d 650, 654 (Tex. App.—Austin 1998, no pet.); Unified Loans, Inc.
v. Pettijohn, 955 S.W.2d 649, 654 (Tex. App.—Austin 1997, no pet.). Because reasonable
minds can differ concerning whether the attorney's fees are just and equitable, we cannot
say the trial court abused its discretion in awarding such fees to Lazy 9.
V.       Trial Court Abused its Discretion in Sanctioning SOS' Attorney
          SOS and Bunch challenge the trial court's assessment of sanctions against Bunch. 
According to Bunch, the trial court erred in finding the suit was frivolous and brought for an
improper purpose. The contentions pursued by SOS in this suit clearly had at least a
reasonable basis in the law and the facts. As such, the suit was not frivolous. We also find
that the trial court abused its discretion in finding that Bunch brought the suit for an
"improper purpose." It was, therefore, error for the trial court to assess sanctions against
Bunch.
          Sanctions for filing frivolous pleadings are available under Chapter 10 of the Texas
Civil Practice and Remedies Code or under Rule 13 of the Texas Rules of Civil
Procedure.


 A trial court's Rule 13 sanction is reviewed for an abuse of discretion. 
Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241–42 (Tex. 1985); Am. Flood
Research, Inc. v. Jones, No. 05-0271, 2006 Tex. LEXIS 436 (Tex. May 5, 2006). "A trial
court's failure to specify the good cause for sanctions in a sanction order may be an abuse
of discretion." Gaspard v. Beadle, 36 S.W.3d 229, 239 (Tex. App.—Houston [1st Dist.]
2001, pet. denied). Sanctions should only be assessed ''in those egregious situations
where the worst of the bar uses our honored system for ill motive without regard to reason
and the guiding principles of the law.'' Dyson Descendant Corp. v. Sonat Exploration Co.,
861 S.W.2d 942, 951 (Tex. App.—Houston [1st Dist.] 1993, no writ). Further, sanctions
should not be used as "a weapon . . . to punish those with whose intellect or philosophic
viewpoint the trial court finds fault." Tarrant County v. Chancey, 942 S.W.2d 151, 154–55
(Tex. App.—Fort Worth 1997, no writ).
          A trial court abuses its discretion if it acts "without reference to any guiding rules and
principles," such that its ruling is arbitrary or unreasonable. Cire v. Cummings, 134 S.W.3d
835, 839 (Tex. 2004). When determining if the trial court abused its discretion, we must
ensure that the sanctions were appropriate or just. Id. The Texas Supreme Court has
articulated a two-part inquiry that we should conduct in making this determination. Id. 
First, we must ensure the punishment was imposed on the true offender and tailored to
remedy any prejudice caused. Id. Second, we must make certain that less severe
sanctions would not have been sufficient. Id. We will review sanctions under Chapter 10
by the same standard.
          The trial court specified in the judgment that sanctions were assessed "pursuant to
Chapter 10 of the Texas Civil Practice and Remedies Code." "A court that determines that
a person has signed a pleading or motion in violation of Section 10.001 may impose a
sanction on the person, a party represented by the person, or both." Tex. Civ. Prac. &
Rem. Code Ann. § 10.004(a). Section 10.001 provides:
The signing of a pleading or motion as required by the Texas Rules
of Civil Procedure constitutes a certificate by the signatory that to the
signatory's best knowledge, information, and belief, formed after reasonable
inquiry:
 
(1)the pleading or motion is not being presented for any
improper purpose, including to harass or to cause unnecessary delay
or needless increase in the cost of litigation;
 
(2)each claim, defense, or other legal contention in the
pleading or motion is warranted by existing law or by a nonfrivolous
argument for the extension, modification, or reversal of existing law or
the establishment of new law;
 
(3)each allegation or other factual contention in the
pleading or motion has evidentiary support or, for a specifically
identified allegation or factual contention, is likely to have evidentiary
support after a reasonable opportunity for further investigation or
discovery; and
 
(4)each denial in the pleading or motion of a factual
contention is warranted on the evidence or, for a specifically identified
denial, is reasonably based on a lack of information or belief.

Tex. Civ. Prac. & Rem. Code Ann. § 10.001 (Vernon 2002). The trial court found that
Bunch signed and filed the suit for an improper purpose and that both the notice and
unconstitutional delegation arguments were frivolous. 
          A.       Discretion Abused in Finding SOS' Claims Frivolous
          Although SOS did not ultimately succeed on the merits, the lawsuit was not
frivolous. As long as the lawsuit had a "reasonable basis in law and constituted an
informed, good-faith challenge," it was not frivolous. See Gen. Elec. Credit Corp. v.
Midland Cent. Appraisal Dist., 826 S.W.2d 124, 125 (Tex. 1991) (per curiam). A lawsuit
is not frivolous if it is based on a good-faith argument for the extension, modification, or
reversal of existing law. Donwerth v. Preston II Chrysler-Dodge, Inc., 775 S.W.2d 634, 637
(Tex. 1989); see Herring v. Welborn, 27 S.W.3d 132, 143 (Tex. App.—San Antonio 2000,
pet. denied); Campos v. Inv. Mgmt. Props., Inc., 917 S.W.2d 351, 355–56 (Tex. App.—San
Antonio 1996, writ denied). 
          SOS presented an argument, with a reasonable basis in the law, advocating
reversal of the enrolled bill rule. As discussed above, the Fourteenth District Court of
Appeals and the Texas Supreme Court have both criticized the current form of the enrolled
bill rule. If the enrolled bill rule did not bar introduction of evidence challenging the
legislative finding, SOS had evidence showing the notice was not sufficient. The notice
simply stated that a water district entitled "Lazy Nine Municipal Utility District" would be
created in Travis County. Specifically, the notice, published in the Austin American-Statesman March 2, 2003, provided as follows:
Pursuant to Tex. Gov't Code Ann. Sec. 313.002, this is to give notice of
intent to introduce in the 78th Texas Legislature, Regular Session, a bill to
be entitled "An Act Relating to the creation, organization, administration,
powers, duties, operation, and financing of Lazy Nine Municipal Utility
District" of Travis County.

This notice does not specify where in Travis County the district would be created or that
the district would be delegated power to create new districts. Entirely omitted from the
notice is any information in relation to the district's size, powers, and duties, or the fact that
Lazy 9 could divide, a characteristic not typical of municipal utility districts. In addition,
SOS offered evidence that the Commissioners Court of Travis County was not notified
thirty days in advance of the filing of the original bill. Although SOS failed to prove that the
delegation of authority to divide was unconstitutional, the argument had a reasonable basis
in the law. We conclude the trial court abused its discretion in finding the suit was
groundless.
          B.       Failure to Rebut Presumption of Good Faith
          Although Rule 13 requires a party to have filed a groundless pleading brought in bad
faith or a groundless pleading for harassment, sanctions under Chapter 10 can be awarded
if the suit was filed for an improper purpose, even if the suit was not frivolous. See Alpert
v. Crain, Caton & James, P.C., 178 S.W.3d 398, 411–12 (Tex. App.—Houston [1st Dist.]
2005, (2) pets. denied); compare Tex. R. Civ. P. 13 with Tex. Civ. Prac. & Rem. Code Ann.
§ 10.001. Under the facts of this case, however, there is insufficient evidence of an
improper purpose.
          We construe the phrase "improper purpose" as the equivalent of "bad faith" under
Rule 13. See Tex. R. Civ. P. 13; cf. Elwell v. Mayfield, No. 10-04-00322-CV, 2005 Tex.
App. LEXIS 6356, at *17 (Tex. App.—Waco Aug. 10, 2005, pet. denied) ("nonfrivolous"
requirement is the same as the "good faith" requirement). Courts must presume that
pleadings are filed in good faith. GTE Commc'n Sys. Corp. v. Tanner, 856 S.W.2d 725,
731 (Tex. 1993). The party seeking the sanctions bears the burden of overcoming the
presumption of good faith in the filing of pleadings. Id. Under Rule 13, "bad faith'' requires
the conscious doing of a wrong for a dishonest, discriminatory, or malicious purpose. 
Stites v. Gillum, 872 S.W.2d 786, 794–96 (Tex. App.—Fort Worth 1994, writ denied). 
          The trial court concluded Bunch filed frivolous claims for an improper purpose,
including "the effort to prevent the scheduled June 30, 2004 closing of a real-estate
transaction by a non-party Buyer and non-party Sellers." Although there was a
considerable amount of evidence introduced at the hearing on sanctions, the evidence
failed to overcome the presumption of good faith. On June 30, the day after the lawsuit
was filed, a sale of the property within the district was scheduled to close. Lazy 9
introduced evidence that, because of the lawsuit, the property did not close as scheduled
and the developers were required to come up with $6 million more in equity and had to pay
an additional $600,000.00 in interest. Although the evidence presented supports an
inference that SOS filed suit in order to delay or prevent the closing and inflict economic
damage, the evidence also supports other inferences. On the day SOS filed suit, the
Travis County Commissioners Court was considering a preliminary plat for a portion of the
property within the boundaries of the District. Bunch testified the filing of the lawsuit was
due to the county commissioners court hearing, and was not for any improper purpose. 
There is no evidence supporting the finding of bad faith other than the timing of the suit.


 
Under the circumstances of this case, Lazy 9 failed to overcome the presumption of good
faith. Therefore, the trial court abused its discretion. 
          We reverse the trial court's assessment of sanctions against Bunch.
Conclusion
          The trial court erred in its reliance on the quo warranto doctrine and the Texas
Water Code in finding that SOS lacked standing to bring this suit. The trial court, however,
did not err in excluding evidence relating to the lack of notice, because the enrolled bill rule
bars the introduction of such evidence. Even if the trial court erred in excluding evidence
concerning SOS' unconstitutional delegation of power argument, SOS has failed to show
that the exclusion probably caused the rendition of an improper judgment. Further, the trial
court did not abuse its discretion in awarding attorney's fees to Lazy 9. Because the suit
was not frivolous and Lazy 9 did not rebut the presumption that the pleadings were in good
faith, the trial court abused its discretion in assessing sanctions against Bunch. 
          For the reasons stated, we reverse the sanctions against Bunch. Therefore, we
modify the trial court's judgment to delete the award of sanctions. As modified, we affirm
the judgment.



                                                                Donald R. Ross
                                                                Justice
 
Date Submitted:      April 18, 2006
Date Decided:         June 1, 2006



OPINION ON MOTION FOR REHEARING

          Save Our Springs Alliance, Inc. (SOS) has filed a motion for rehearing in which it
contends this Court erred in (1) failing to address its notice argument under subsection (d)
of Article XVI, Section 59 of the Texas Constitution; (2) concluding that SOS' separation
of powers argument was inadequately briefed; (3) failing to remand to the trial court the
award of attorney's fees to Lazy 9 Municipal Utility District (Lazy 9) for a redetermination
of such fees; and (4) failing to hold House Bill 3565 unconstitutional on its face. We
overrule the motion.
Notice Under Subsection (d)
          In its first argument on rehearing, SOS directs our attention to the failure of our
original opinion to address whether the trial court erred in excluding evidence concerning
notice required under Article XVI, Section 59(d) of the Texas Constitution in addition to
evidence concerning notice under Article XVI, Section 59(e). See Tex. Const. art. XVI,
§ 59(d), (e). In addition, SOS contends evidence concerning notice under subsection (d)
is distinguishable from evidence concerning notice under subsection (e) because
Beckendorff v. Harris-Galveston Coastal Subsidence Dist. dealt only with subsection (e). 
558 S.W.2d 75, 78 (Tex. Civ. App.—Houston [14th Dist.] 1977), writ ref'd n.r.e., 563
S.W.2d 239 (Tex. 1978). According to SOS, the Texas Supreme Court's decision in
Barshop v. Medina County Underground Water Conservation District, which addressed the
merits of a challenge under subsection (d), cannot be reconciled with Beckendorff. 
Compare Barshop v. Medina County Underground Water Conservation Dist., 925 S.W.2d
618, 627–28 (Tex. 1996), with Beckendorff, 558 S.W.2d at 78. 
          As noted in our original opinion, the Texas Supreme Court did not address the
enrolled-bill rule in Barshop. There could be numerous reasons for this other than an
implied abandonment of that rule. Thus, we are unwilling to interpret Barshop as an
implicit abandonment of the enrolled-bill rule. Further, we are not persuaded that the
applicability of the enrolled-bill rule to notice under subsection (d) is distinguishable from
notice under subsection (e). For the reasons stated in our original opinion concerning
notice under subsection (e), we likewise hold the trial court did not err in excluding
evidence concerning notice under Article XVI, Section 59(d) of the Texas Constitution. The
enrolled-bill rule requires the exclusion of the evidence. The trial court, therefore, did not
abuse its discretion in excluding evidence challenging whether the notice provisions of
Article XVI, Section 59(d) of the Texas Constitution were met.
Separation of Powers Argument
          In footnote 4 of its motion for rehearing, SOS challenges our conclusion that its
separation of powers argument was inadequately briefed and states that "[t]here is no
authority or case law that supports such a rigidified and draconian application of Rule
38.1." SOS further says it spent four pages in its original brief discussing this issue and
cited three Texas Supreme Court opinions and one court of appeals decision: Corzelius
v. Harrell, 143 Tex. 509, 186 S.W.2d 961, 964 (1945); Tarrant County v. Ashmore, 635
S.W.2d 417 (Tex. 1982); Holmes v. Morales, 924 S.W.2d 920 (Tex. 1996); Black v. Dallas
County Bail Bond Bd., 882 S.W.2d 434 (Tex. App.—Dallas 1994, no writ). SOS is
"flummoxed about how such detailed attention to an argument can be dismissed as
'inadequately briefed.'" 
          SOS' brief contains a single paragraph concerning the separation of powers
argument, fails to cite any standards, fails to apply the separation of powers doctrine to the
facts of this case, includes no citation to the record, and cites only one case, Corzelius,
relevant to the separation of powers doctrine. The remaining pages claimed by SOS as
part of its briefing on this issue actually concern whether notice is an adjudicative fact or
a legislative fact.
          SOS appears to contend that the three pages discussing the difference between
legislative and adjudicative facts is part of their separation of powers argument. Although
the separation of powers section of its brief immediately precedes the discussion of
legislative and adjudicative facts, the two discussions are contained in separate sections
and there is little indication that both sections concern separation of powers. Further, only
one of the cases cited in the remaining pages concerns the separation of powers
doctrine.



          We discussed the difference between adjudicative and legislative facts in a footnote
in our original opinion. Adjudicative facts are facts particular to a case while legislative
facts are facts related to legal reasoning, the law-making process, and policy
determination. O'Connell v. State, 17 S.W.3d 746, 749 (Tex. App.—Austin 2000, no pet.);
see Ashmore, 635 S.W.2d at 423.


 Courts should defer to the Legislature's findings of
legislative facts, but courts are not required to defer to the determination of adjudicative
facts. See O'Connell, 17 S.W.3d at 749. 
          Even if the facts at issue are adjudicative facts, such a classification would not be
determinative of whether the enrolled-bill rule violates the separation of powers
doctrinethe distinction is not the standard for determining a separation of powers
violation. Whether the facts are adjudicative facts or legislative facts may prove relevant
concerning whether the court must defer to the findings of the Legislature, but the
classification is not determinative of whether the enrolled-bill rule violates the separation
of powers doctrine. As we stated in our original opinion, the enrolled-bill rule is a rule of
admissibility. 
          We agree with SOS that the standard for whether an issue has been adequately
briefed should not be rigid or draconian. Under certain circumstances, a single case may
prove to be "appropriate citations to authorities and to the record." See Tex. R. App. P.
38.1(h). Whether an issue has been adequately briefed depends on the complexity of the
issue and the extent courts have addressed the issue. The separation of powers doctrine
has been extensively litigated in courts. Although SOS cited the above cases, its argument
consists exclusively of conclusory statements that the enrolled-bill rule violates the
separation of powers doctrine. None of the authorities cited involve similar circumstances.
We adhere to our earlier conclusion that SOS' separation of powers argument has been
inadequately briefed.



Remand of Attorney's Fees
          Next, SOS contends this Court erred in affirming the trial court's determination that
awarding attorney's fees to Lazy 9 was just and equitable. According to SOS, this Court
should have remanded this issue to the trial court for a reassessment of attorney's fees in
light of our holdings that (1) SOS had standing to bring its lawsuit; (2) the lawsuit was not
frivolous; (3) the evidence was insufficient that the lawsuit was brought for an improper
purpose; and (4) SOS' attorney should not have been sanctioned. SOS argues that our
refusal to vacate the attorney's fees and remand for a reassessment of those fees
assumes that the trial court's erroneous determination of these issues played no role in the
level of attorney's fees that it determined to be equitable and just.
          All of the cases cited by SOS, save one, involved a complete reversal. See City of
Harlingen v. Alvarez, No. 13-03-00169-CV, 2005 Tex. App. LEXIS 7976 (Tex.
App.—Corpus Christi Sept. 29, 2005, no pet. h.) (mem. op.); Scottsdale Ins. Co. v. Travis,
68 S.W.3d 72, 77 (Tex. App.—Dallas 2001, pet. denied); Scott v. Cannon, 959 S.W.2d
712, 723 (Tex. App.—Austin 1998, pet. denied). The remaining case cited by SOS
involved a more extensive reversal than in this case. In Securtec, this Court held there was
a genuine issue of material fact concerning whether Gregg County violated the statutory
bidding requirements and, therefore, summary judgment was inappropriate. Securtec, Inc.
v. County of Gregg, 106 S.W.3d 803, 813–14 (Tex. App.—Texarkana 2003, pet. denied)
(part of judgment affirmed and severed, remaining part reversed and remanded for new
trial). This Court ordered a reconsideration of attorney's fees "if the trial court does find in
favor of Securtec on remand." Id. at 817. Because Securtec reversed a significant portion
of the trial court's judgment, it is clearly distinguishable from the current case.
          In Ranger Ins. Co. v. Ward, 107 S.W.3d 820 (Tex. App.—Texarkana 2003, pet.
denied), the appellant urged the Court to reverse the award of attorney's fees and remand
to the trial court for reconsideration of whether the award was equitable. This Court
rejected the appellant's argument because "overall, the trial court did not err in its
interpretation and application of the law" and therefore, "it did not abuse its discretion in
awarding attorney's fees to the Landowners." Id. at 830. 
          Similar to Ranger Insurance, the trial court in this case committed some errors, but
the trial court's judgment was correct overall. As SOS correctly asserts, our opinion
undermined at least six of the trial court's findings of facts and conclusions of law. 
However, five of these findings are entirely concerned with the sanctions assessed against
William G. Bunch. The findings concerning sanctions against Bunch did not necessarily
influence the trial court's conclusions concerning whether the award of attorney's fees was
equitable or just. The remaining finding concerns whether the quo warranto doctrine
prevented SOS from bringing suit. It is apparent the trial court did not rely extensively on
the finding that quo warranto prevented SOS from bringing suit. If SOS lacked standing
to bring suit due to quo warranto, the appropriate remedy would have been dismissal,
rather than rendering final judgment in favor of Lazy 9. It is, therefore, apparent the trial
court relied primarily on its other findings. We do not believe our opinion modified the trial
court's judgment sufficiently to affect the trial court's determination of whether the award
of attorney's fees to Lazy 9 was equitable and just. 
H.B. 3565 Unconstitutional on its Face
          Last, SOS contends this Court should grant rehearing as to whether H.B. 3565
constitutes an unconstitutional delegation on its face. Compare Tex. Const. art. XVI, § 59
with Act of May 28, 2003, 78th Leg., R.S., ch. 1158, 2003 Tex. Gen. Laws 3268. 
According to SOS, the twenty-day notice requirement contained in the bill causes the bill
to be unconstitutional on its face since it conflicts with the thirty-day notice requirement
contained in the Texas Constitution. In addition, SOS contends the bill is unconstitutional
because the Texas Constitution requires the notice to local governmental entities to be at
least thirty days before the election, but the bill only requires notice no later than thirty days
after the election. 
          The Texas Constitution requires notice must be given of a bill which creates a
conservation and reclamation district. Section 59(d) of the Texas Constitution provides as
follows:
No law creating a conservation and reclamation district shall be passed
unless notice of the intention to introduce such a bill setting forth the general
substance of the contemplated law shall have been published at least thirty
(30) days and not more than ninety (90) days prior to the introduction thereof
in a newspaper or newspapers having general circulation in the county or
counties in which said district or any part thereof is or will be located and by
delivering a copy of such notice and such bill to the Governor who shall
submit such notice and bill to the Texas Water Commission, or its successor,
which shall file its recommendation as to such bill with the Governor,
Lieutenant Governor and Speaker of the House of Representatives within
thirty (30) days from date notice was received by the Texas Water
Commission. Such notice and copy of bill shall also be given of the
introduction of any bill amending a law creating or governing a particular
conservation and reclamation district if such bill (1) adds additional land to
the district, (2) alters the taxing authority of the district, (3) alters the authority
of the district with respect to the issuance of bonds, or (4) alters the
qualifications or terms of office of the members of the governing body of the
district. 

Tex. Const. art. XVI, § 59(d). Section59(e) requires notice as provided in subsection (d)
to the county commissioners court of the affected counties. See Tex. Const. art. XVI,
§ 59(e). 
          H.B. 3565, though, provides that Lazy 9's board of directors must give notice of an
election for division of the district "not later than the 20th day before the election." Act of
May 28, 2003, 78th Leg., R.S., ch. 1158, § 14, 2003 Tex. Gen. Laws 3268, 3274. In
addition, the board must provide notice "not later than the 30th day after the date of the
election" to the Texas Commission on Environmental Quality, the attorney general, the
commissioners court of each county, and any municipality with extraterritorial jurisdiction
over the land within each new district. Id. 
          It is not entirely clear that the notice provision of the Texas Constitution applies to
the division of a district under H.B. 3565. However, it is not necessary for us to decide that
issue. Assuming the constitutional notice provision does apply, SOS' argument that our
opinion erred in failing to hold the bill was unconstitutional on its face still fails. SOS did
not raise this issue until its motion for rehearing, and the notice provisions of the bill do not
foreclose proper notice under the Texas Constitution.
          SOS did not argue the bill was unconstitutional on its face until its motion for
rehearing. Although SOS did argue that Lazy 9's ability to divide violates the notice
requirement of the Texas Constitution, it did not advance in its brief or at oral argument the
contention that the differences in the statute's notice requirements from the Texas
Constitution's notice requirements cause the bill to be unconstitutional on its face. This
argument cannot be raised at this point in the proceedings. "Rehearing is not an
opportunity to test alternative arguments after finding other arguments unsuccessful." ICM
Mortgage Corp. v. Jacob, 902 S.W.2d 527, 535 (Tex. App.—El Paso 1994, writ denied)
(op. on reh'g); see Cont'l Dredging, Inc. v. De-Kaizered, Inc., 120 S.W.3d 380, 400 (Tex.
App.—Texarkana 2003, pet. denied) (op. on reh'g). A motion for rehearing is an
inappropriate time to raise new arguments. 
          Even if this issue had been raised, the difference between the notice requirements
under H.B. 3565 and Article XVI, Section 59 of the Texas Constitution does not render the
bill unconstitutional on its face. Although the bill contains different notice requirements, the
bill does not conflict with the notice requirement contained in the Texas Constitution, if
applicable. While it is a wise policy for statutes to comply with minimum constitutional
requirements, there is nothing in the statute which would prohibit providing the appropriate
notice required by the Texas Constitution. Lazy 9 can still comply with the notice
requirements of the Texas Constitution, if applicable, even though the notice provisions
differ from the notice requirements of H.B. 3565. We overrule SOS' contention that the bill
is unconstitutional on its face.
Conclusion
          The trial court did not err in excluding evidence concerning notice under
subsection (d) of Article XVI, Section 59 of the Texas Constitution. Because SOS failed
to cite sufficient authority, advance any legal analysis, or apply the appropriate standards
to the facts of this case, the separation of powers argument was inadequately briefed. Our
opinion did not modify the trial court's judgment sufficiently to affect the trial court's
determination of whether the award of attorney's fees to Lazy 9 was equitable and just. 
Therefore, we reject SOS' argument that the issue of attorney's fees must be remanded
to the trial court. We also reject SOS' argument that H.B. 3565 constitutes an
unconstitutional delegation on its face. It is improper for SOS to raise new issues in a
motion for rehearing. At any rate, the differences between the notice requirements under
H.B. 3565 and Article XVI, Section 59 of the Texas Constitution do not render the bill
unconstitutional on its face. 
          Accordingly, we overrule SOS' motion for rehearing.



                                                                Donald R. Ross
                                                                Justice
 
Date:  July 18, 2006